DISTRICT COURT CLI
6/8/2018 10:31
STEPHEN T. PACHE
Jorge Mo

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**No.**   D-101-CV-2018-01708

Case assigned to Shaffer, Gregory S.

**MARGARET DARR,**

      **Plaintiff,**

      **RECEIVED**
      **JUN 1 5 2018**

**v.**

      **BY:**_____

**NEW MEXICO DEPARTMENT OF GAME AND FISH,**

      **Defendant.**

**COMPLAINT FOR VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT**
**FOR DISABILITY DISCRIMINATION AND RETALIATION,  RETALIATION FOR VI-**
**OLATIONS OF THE FAIR PAY FOR WOMEN ACT, WHISTLEBLOWER PROTEC-**
**TION ACT AND FRAUD AGAINST THE TAXPAYER ACT**

Plaintiff, as her Complaint, states:

I.
OVERVIEW

1.      Margaret Darr ("Ms. Darr") was employed with the New Mexico Department of

Game and Fish ("NMDGF") as the Non game Avian Biologist.  Ms. Darr was regarded as an ex-

cellent employee known for her passion, expertise, cooperative spirit, and commitment to the

conservation of non-game birds in New Mexico.

Ms. Darr was hired by NMDGF in November 2013 and soon discovered that she was be-

ing paid significantly less than a male employee with less experience and the same education in

violation of the New Mexico Fair Pay for Women Act.  Ms. Darr reported the violation to

NMDGF Human Resources in November 2014, stating she was paid 87% ($20.63 vs $23.70/hr)

of her male comparator.  NMDGF Administration agreed to rectify Ms. Darr's unfair pay, but did


EXHIBIT
A

not admit to the statutory violation—by issuing paperwork to show a merit-based pay raise instead of the Fair Pay for Women Act violation—and did not inform Ms. Darr of the additional monetary compensation to which she was entitled. During this process NMDGF justified Ms. Darr's merit based pay by citing her excellent work performance repeatedly. Ms. Darr's pay raise was also delayed because NMDGF used a merit-based pay remedy. NMDGF denied further relief to Ms. Darr after she inquired about back pay for the violation, but was informed backpay was not available, even though the statute expressly provides for these damages. Ms. Darr then made an inquiry with the EEOC, but elected not to file a formal complaint because of retaliation fears. EEOC filed a complaint against NMDGF without Ms. Darr's knowledge; she requested the complaint be withdrawn. After Ms. Darr pursued her rights under the Fair Pay for Women Act and with EEOC, the NMDGF engaged in an endless campaign of retaliation in violation of state law.

Ms. Darr began to experience retaliation in the form of denial of funding, restriction of activities/opportunities and increased scrutiny from her supervisors. After Ms. Darr tried to address her concerns with her supervisors the harassment and retaliation increased. In May 2017, Ms. Darr alerted NMDGF Administration about her supervisors treating her substantially different than other employees and denying funding/approval needed to complete her assigned job. Further Ms. Darr stated her Supervisors were acting improperly causing inadequate measures to conserve non-game birds of New Mexico, which is a duty of NMDGF.

NMDGF provided no response to Ms. Darr. Instead, the NMDGF began to disciple Ms. Darr for "failing to follow the chain of command" for requesting equal treatment and the ability

to do the job she was hired to perform. Even though Ms. Darr presented information to refute the disciplinary allegations, the NMDGF ignored the information.

NMDGF permitted Ms. Darr's Supervisors to continue their retaliatory behavior causing Ms. Darr to develop a temporary mental health condition, anxiety and clinical depression, as her healthcare provider diagnosed. Even though NMDGF was aware of Ms. Darr's temporary condition, NMDGF required Ms. Darr to meet directly with her supervisor in order to pursue grievances and a request for a reasonable accommodation. Ms. Darr was also subjected to a four-hour interrogation by armed and uniformed NMDGF Conservation Officers and never provided with the outcome of this investigation.

All of Ms. Darr's grievances, complaints and pleas for assistance were ignored by NMDGF. Ms. Darr's request for accommodation was met with no response until Ms. Darr insisted an interactive meeting be conducted. NMDGF held one meeting, and had no further interactive discussion. The NMDGF refused to even provide Ms. Darr with a reasonable accommodation to purchase a tape recorder in lieu of a temporary change of supervision. NMDGF then sought to unilaterally dismiss Ms. Darr from employment using improperly a State Personnel Board rule that applied only to individuals with permanent disabilities. Ms. Darr constructively discharged from her position in January 2018.

## II.
## PARTIES

2.     Margaret "Peggy" Darr is a resident of Santa Fe County, New Mexico.

3.     The New Mexico Department of Game and Fish is a state agency.

4.     Angelica Ruiz was or acted in the capacity of Human Resources Director for the New Mexico Department of Game and Fish at all times in this Complaint.

5.     Alexandra Sandoval was the Director of the New Mexico Department of Game and Fish during all times in this Complaint.

6.     Stewart Liley was the Chief for the Wildlife Management Division for the New Mexico Game and Fish Department at all times in this Complaint.

7.     James "Jim" Comins III was the Assistant Director for the Resource Divisions for the New Mexico Game and Fish Department at all times in this complaint.

8.     Elise Goldstein was the Assistant Chief for the Wildlife Management Division for the Game and Fish Department at all times in this Complaint.

9.     Mason Cline was the Bird Program manager for the Wildlife Management Division for the Game and Fish Department at all times in this Complaint.  Ms. Goldstein was Mr. Cline's supervisor during all times in this Complaint.  Mr. Cline was Ms. Darr's direct supervisor.

III.
VENUE and JURISDICTION

10.    Plaintiff is a resident of Santa Fe County, New Mexico

11.    Defendant's principle place of business is Santa Fe, New Mexico.

12.    Venue is proper in the First Judicial District Court.

13.    Plaintiff exhausted administrative remedies with the New Mexico Human Rights Commission on March 13, 2018 through the receipt of a letter of non determination of her original and amended charge of discrimination.

14.    Jurisdiction is proper for all claims.  NMSA 1978, Sec. 10-16C-1, et seq.

(Whistleblower Protection Act), NMSA Sec. 28-23-1 et. seq. (Fair Pay for Women Act), NMSA

1978, Sec. 44-9-11 (Fraud Against the Taxpayer Act), NMSA Sec. 28-1-7 (NM Human Rights

Act).


IV.
GENERAL ALLEGATIONS

15.    The allegations contained in paragraphs 1 to 14 are re-alleged as if set forth here-

in.

16.    Ms. Darr began her employment with the NMDGF on November 9, 2013.  Ms.

Darr is a Master's-level Wildlife Biologist and worked in the Wildlife Management Division for

NMDGF.

17.    After passing her one-year probation period, Ms. Darr filed a complaint in accord

with the New Mexico Fair Pay For Women Act.  Ms. Darr was being paid significantly less than

a comparable male employee with less experience and the same education.  The NMDGF

reached a resolution with Ms. Darr, but did not immediately provide pay equalization or inform

her of her right to additional compensation provided under this state law.

18.    After Ms. Darr reached a resolution of her New Mexico Fair Pay For Women Act

grievance, the NMDGF's supervisors began to criticize her job performance that prior to her

grievance had been rated as exceptional.

19.    Ms. Darr's former supervisor left a "soft file" behind filled with criticism that was

not brought to Ms. Darr's attention, and had it been, Ms. Darr would have pointed out untrue in-

formation about her. The former supervisor violated the Collective Bargaining Agreement through maintaining a "soft file" and by providing information to other supervisors of Ms. Darr. Between May 2015 and May 2016, Ms. Darr's entire chain of supervision changed.

20.     In April 2015, Ms. Darr made an inquiry with the EEOC regarding unfair pay, but elected not to file a formal complaint because of retaliation fears. EEOC filed a complaint against NMDGF without Ms. Darr's knowledge; she requested the complaint be withdrawn. In May 2015 Stewart Liley became Chief of the Wildlife Management Division, at which time he would have been made aware of the EEOC inquiry/complaint and Ms. Darr's pay issues. Ms. Darr never received new project funding after Mr. Liley became Chief.

21.     By June 2016, Mason Cline was Ms. Darr's direct supervisor as the Bird Program Manager. Elise Goldstein was the Assistant Chief and Mr. Cline's supervisor. Stewart Liley was Ms. Goldstein's supervisor. Ms. Darr's position was Non Game Avian Biologist.

22.     The NMDGF receives wildlife conservation funding primarily from state license sales which is amplified by federal wildlife restoration funds through the U.S. Fish and Wildlife Service. NMDGF biologists, such as Ms. Darr, receive funding for their area of conservation work through grants comprised of these state and federal funds. These grants fund employee salaries as well as conservation and research projects. Biologists including Ms. Darr are required by NMDGF to submit project proposals through their NMDGF chain of command for approval to pursue desired conservation and research projects and use grant funding for such projects. The biologist's chain of command has absolute discretion on which projects are approved/funded and which are not. For Ms. Darr funding decisions were ultimately made by Mr. Liley with input and guidance from Mr. Cline and Ms. Goldstein.

23. Ms. Darr began to question the funding provision for the non game bird program beginning in December 2016. Ms. Darr reasonably believed the non game bird project proposals she submitted were not being moved through the NMDGF approval process. Ms. Darr made all attempts to develop all proposals considering the best available science and current wildlife management techniques. Mr. Cline would take more than three months to consider the short (1-2 page) proposals, and projects/funding were not being approved for any proposed projects. These delays precluded Ms. Darr from completing her assigned job, using dedicated grant funding and properly conserving non game birds.

24. On December 23, 2016, Ms. Darr contacted Mr. Cline's Supervisor, Ms. Goldstein about the delay in Mr. Cline's proposal consideration and lack of answers on project approval/funding.

25. On January 17, 2017, Ms. Darr attended a meeting with Mr. Cline and Ms. Goldstein and was informed monies for non game bird projects would be allocated to her. No monies were ever provided. During this meeting Mr. Cline stated he had sent email feedback to Ms. Darr about her proposals; however, Ms. Darr never received the feedback. Ms. Darr asked Mr. Cline for copies of the emails. Mr. Cline responded by discouraging Ms. Darr from further seeking the feedback emails. Mr. Cline never provided a copy of the emails he stated showed feedback for Ms. Darr's proposals.

26. NMDGF records show for January 1, 2017 through December 31, 2017, $131,873 in grant funding was set for non game bird species. By December 31, 2017, NMDGF only spent $53,257.61 of these grant monies to cover Ms. Darr's salary and incidental expenses; none of the

remaining funds intended for conservation and research were used despite multiple project pro-
posals provided by Ms. Darr.

27.    The non game bird grant funding was decreased between 2016 and 2017 by ap-
proximately $42,000.

28.    On January 27, 2017, Ms. Darr sent an email to Ms. Goldstein about not receiving
Mr. Cline's feedback emails and a larger concern that Mr. Cline attempted to transfer blame to
Ms. Darr saying she missed the emails. Ms. Darr requested Ms. Goldstein merely follow up and
not provide a copy of Ms. Darr's email to Mr. Cline because of retaliation fears. After the meet-
ing, Ms. Goldstein promptly sent Ms. Darr's email to Mr. Cline.

29.    After the January 27, 2017 meeting, the retaliation Ms. Darr suffered intensified.
Ms. Darr continued to express concerns about not receiving funding for non game bird conserva-
tion projects, receiving directives that were detrimental to non game bird conservation, and being
treated differently than other biologists employed with the NMDGF (e.g. denial of field work/
training opportunities, employment rules applied only to Ms. Darr, restrictions from working
with partners), as well as being denied information and explanations for decisions.

30.    After being ignored for several months and working up her chain of command
through Stewart Liley, on May 22, 2017, Ms. Darr sent an email to Assistant Director for
NMDGF, James Comins III. Mr. Comins was Mr. Liley's supervisor and held an administrative
position higher in rank than the three direct supervisors Ms. Darr claimed were creating a retalia-
tory work environment.

31.    On June 2, 2017, NMDGF responded to Ms. Darr's email to Mr. Comins by issu-
ing a Letter of Reprimand through Mr. Cline and Ms. Goldstein. The Letter of Reprimand was 8

pages, contained 51 separate items and covered the 1-year period since Mr. Cline began supervising Ms. Darr; no progressive discipline occurred as none of the items in this Letter were previously brought to Ms. Darr's attention in any form. The Letter of Reprimand declared Ms. Darr was insubordinate through her engagement in protected activity through filing her grievance. The Letter of Reprimand referenced Ms. Darr's protected activity such as requesting emails from her supervisor related to project funding decisions and her complaint to Mr. Comins, as insubordination. The Letter of Reprimand threatened Ms. Darr's employment by stating she could be fired. Ms. Goldstein and Mr. Cline issued the Letter of Reprimand. Mr. Comins did not respond to Ms. Darr's email.

32.      Under NMDGF policy and New Mexico State Personnel Board rules employees are permitted to file rebuttals to letters of reprimand.

33.      On June 5, 2017, Ms. Darr informed Mr. Cline she needed to work over the prior weekend to prepare a rebuttal and associated grievance to the extensive Letter of Reprimand due to an 11-calendar day deadline and existing work activities already scheduled.

34.      On June 6, 2017, Ms. Darr informed Mr. Cline that she would need to either claim comp time or adjust her scheduled activities to complete the rebuttal and grievance within the time limit.

35.      On June 7, 2017, Ms. Darr was served with a Notice of Contemplated Action by Ms. Goldstein to suspend her for three days, unpaid, for her failure to provide Mr. Cline with twenty four hours notice before working additional time over the weekend on the rebuttal and the grievance. Mr. Cline and Ms. Goldstein unilaterally applied a twenty-four hour notification rule to Ms. Darr that was not dictated by policy or applied to other NMDGF employees. Mr. Cline's

actions to issue the three day suspension deviated from his prior actions when Ms. Darr had also worked on a weekend months prior and notified Mr. Cline after the fact; his prior email response was "thanks for letting me know." The NMDGF did not follow its chain of command process because Mr. Cline did not present the discipline, his superior, Ms. Goldstein did.

36.     Based on information and belief, the NMDGF does not uniformly discipline employees related to working additional hours.

37.     Immediately after serving the Notice of Contemplated action to Ms. Darr, on June 7, 2017, Ms. Goldstein sent an email to Ms. Darr informing her that she was being limited to two additional hours to work on rebuttals, complaints, or any other form of response to the Letter of Reprimand, Notice of Contemplated Action, or any other personnel issues. Ms. Darr was also informed that she would not be able to adjust her schedule or refrain from any scheduled meetings or field activities to work on these items.

38.     On June 12, 2017, Ms. Darr filed a reply to the Notice of Contemplated Action and a rebuttal to the Letter of Reprimand.

39.     On June 12, 2017, Ms. Darr informed Ms. Ruiz she began to suffer depression as a result of the hostile work environment for retaliation. The NMDGF does not have adequate policies and procedure designed to address complaints involving discrimination. The NMDGF does not have an adequate system to independently review charges of discrimination and retaliation and permits managers to retaliate when employees complain.

40.     Despite receiving information directly that Ms. Darr was a disabled employee due to the disclosure of depression, Ms. Ruiz did nothing in response to her legal obligations under the New Mexico Human Rights Act.

41.     Instead, Ms. Ruiz ratified the ongoing retaliation through strictly enforcing
NMDGF's grievance procedure by requiring Ms. Darr to meet directly with Mr. Cline to file her
grievance about Mr. Cline in reference to the Letter of Reprimand and related retaliation.  Ms.
Darr was not allowed to include the Notice of Contemplated Action in her grievance per policy.
If Ms. Darr was not able to meet with Mr. Cline, her grievance about his retaliation would not be
accepted by the NMDGF for review. NMDGF knew Ms. Darr was intimidated and her emotional
well being was impacted through these required meetings.

42.     The NMDGF required Ms. Darr to meet one on one with Mr. Cline on June 12,
2017 to present the grievance against Mr. Cline. The grievance contained 20 pages of new infor-
mation along with hundreds of pages of supporting documentation including email.

43.     On June 16, 2016, Ms. Darr was required to again meet with Mr. Cline regarding
his decision about her grievance.  Mr. Cline informed Ms. Darr that he reviewed the grievance
against him and stated: "No new information was provided in your rebuttal, thus the written rep-
rimand, and the associated notice of contemplated action still stand."  Through NMDGF's inter-
pretation of its grievance policy, Mr. Cline and NMDGF were allowed to simply ignore Ms.
Darr's extensive evidence and concerns regarding the Letter of Reprimand and ongoing retalia-
tion fostering the hostile work environment.

44.     On June 19, 2017, Mr. Liley and Mr. Cline served Ms. Darr with a Notice of Final
Action denying relief to Ms. Darr in terms of her rebuttal to the Letter of Reprimand and reply to
the Notice of Contemplated Action regarding a 3 day suspension.  Despite providing documenta-
tion of more than twenty pages to refute Mr. Cline's allegations in these documents, Mr. Cline
and Mr. Liley proceeded with the unpaid three-day suspension.  The NMDGF did not follow its

chain of command process because Ms. Goldstein did not present the discipline, her superior, Stewart Liley did.

45.     On June 20, 2017, Ms. Darr proceeded with the NMDGF grievance procedure elevating her grievance denied by Mr. Cline on June 16, 2016 to Ms. Goldstein. Ms. Darr requested the Letter of Reprimand be removed from her personnel record due to the charges being unsupported and again identifying retaliation being present in these decisions and work environment.

46.     Ms. Darr was suspended without pay from June 21 to June 23, 2017.

47.     On June 30, 2017, Ms. Goldstein denied Ms. Darr's elevated grievance from June 20, 2017 about the Letter of Reprimand and associated retaliation. Ms. Goldstein informed Ms. Darr that this denial constituted the final action of the Department on this matter. Within two weeks, the NMDGF disciplined Ms. Darr twice after she complained about a lack of non game bird conservation funding and the retaliatory work environment her grievances caused. Prior to 2017, Ms. Darr's work record was in good standing with no prior discipline.

48.     On July 3, 2017, Ms. Darr filed an appeal of the three day suspension with the New Mexico State Personnel Office.

49.     On July 10, 2017, Ms. Darr was prescribed medication to assist her with her depression and anxiety.

50.     On August 9, 2017 Ms. Darr requested a transfer from her supervisors due to her physician's recommendation to improve her work environment. Ms. Darr's workplace situation and disabling condition were outlined in full in a letter from her lawyer sent to NMDGF Director, Ms. Alexa Sandoval.

51.    On August 10, 2017, Ms. Darr was approved for intermittent Family and Medical

Leave.

52.    Ms. Darr's request for a transfer was not acted on promptly. The NMDGF did not

investigate Ms. Darr's charges of a retaliatory work environment promptly after the August 9th

letter and approval of Family Medical Leave.

53.    On September 11, 2017, Mr. Cline ordered Ms. Darr into a closed door meeting

with him, despite repeatedly being informed that interaction with him triggered her disabling

condition, anxiety. Mr. Cline acted in an aggressive manner and criticized Ms. Darr for commu-

nicating with her federal staff and partner agencies on mutual projects. Communications regular-

ly are allowed by comparable employees at NMDGF. Mr. Cline's raised voice and hostile ac-

tions became so aggressive that they captured the attention of another NMDGF employee pass-

ing by the door and window of the closed room.

54.    On September 15, 2017, Ms. Darr filed a grievance about Mr. Cline's treatment

during the September 11, 2017 meeting. Because the NMDGF required Ms. Darr to always go

through her supervisor, Mr. Cline, face to face, or the grievance would not be accepted and be-

cause she was suspended for three days for failing to follow the chain of command, Ms. Darr

sent an email to Mr. Cline about his aggressive behavior and ongoing retaliation as she was men-

tally unable to confront him in person.

55.    On September 22, 2017, Mr. Cline issued an interim performance evaluation,

which rated Ms. Darr's performance as not achieving standards. This was the first evaluation

Ms. Darr received as a NMDGF employee that stated she did not meet or exceed work perfor-

mance standards. Ms. Darr had received praise and no complaints from the public, federal and/ or state partners or from any other employee with the NMDGF during this evaluation period.

56.    Also on September 22, 2017, Ms. Ruiz informed Ms. Darr that filing a grievance through email against Mr. Cline was not acceptable. Ms. Ruiz informed Ms. Darr she was required to meet with Mr. Cline if she wanted to pursue her grievance, despite the subject of her complaint being Mr. Cline's aggressive and hostile interactions alleged during their meeting on September 11, 2017. Ms. Ruiz required this process be followed even though she and the NMDGF had notice of Ms. Darr's disability and her request to be transferred to a different supervisor.

57.    On September 27, 2017, Ms. Darr requested Ms. Ruiz make an exception to the policy requiring a face to face meeting prior to filing a grievance given the circumstances. In addition, Ms. Darr stated to Ms. Ruiz that the NMDGF had not engaged her in an interactive process despite the August 9th letter and FMLA certification. The NMDGF did not respond to Ms. Darr's request to have a different supervisor as required under state law.

58.    On September 28, 2017, Ms. Darr submitted a rebuttal to the interim performance evaluation. Ms. Darr again identified her work environment as hostile and retaliatory.

59.    On October 2, 2017, Ms. Darr withdrew her State Personnel Board appeal because her anxiety prevented her from continuing to confront her supervisors through the adjudication process.

60.    Almost immediately after Ms. Darr withdrew her State Personnel Board appeal, the NMDGF investigated Ms. Darr's two prior grievances to NMDGF and allegations about retaliation she continued to raise for more than nine months. The NMDGF used three employees:

two mid-level law enforcement supervisors and one from its fish and wildlife crime investigation unit. These three employees are statutorily charged with certain law enforcement authority related to policing hunting and fishing. The employees are certified law enforcement officers with statutorily limited powers. The statutory duties for these employees does not include employment discrimination investigations. It is not known if the employees were trained on discrimination and retaliation investigations in addition to their quasi law enforcement duties.

61.     The NMDGF interrogated Ms. Darr for more than four hours across two days, October 4 and 5, 2017. Two of the employees were in full uniform and carried guns into the interrogation with Ms. Darr. Ms. Darr was informed that the third employee would be involved in the investigation but he would only be active in the background. The interrogations were recorded by NMDGF on voice recorders and video cameras. Ms. Darr never received any follow up from the NMDGF about the results of this investigation, despite requests in multiple letters from her lawyer and admission by NMDGF in a response letter to the New Mexico Human Rights Bureau that the investigation had been completed at an undisclosed date.

62.     On October 11, 2017, Ms. Darr was required to attend a meeting with Mr. Comins and Mr. Cline. Ms. Goldstein's and Mr. Liley's absence was not explained even though NMDGF was not following it chain of command policy. Upon hire with the NMDGF, Ms. Darr was presented with a list of the essential functions of her position.

63.     During the October 11, 2017 meeting, Mr. Comins and Mr. Cline informed Ms. Darr via written memo that communicating orally and in writing was an essential function of her position. Ms. Darr was not permitted to discuss this issue. Ms. Darr's position does not list communicating with the supervisor in writing and orally as an essential function of her position.

The NMDGF imposed a change to Ms. Darr's essential job functions without negotiation and discussion. This memo was later shared by Mr. Comins via email with Ms. Darr's chain of command and NMDGF Administration up to but excluding the director, Ms. Sandoval.

64.     Ms. Darr reasonably believed the unilateral change to essential functions of her position was in retaliation for her ongoing advocacy for non game bird species and to deter her from continuing to request an accommodation.

65.     On October 19, 2017, Ms. Darr filed another grievance related to her evaluation and retaliatory work environment.

66.     On October 23, 2017, Ms. Darr's healthcare provider increased her medication to allow Ms. Darr to continue to go to work related to NMDGF's ongoing failure to address Ms. Darr's disability and hostile work environment.

67.     On October 24, 2017, Ms. Darr provided recertification information to Ms. Ruiz to allow her Family and Medical Leave due to her disability related to depression and anxiety. As with her original Family and Medical Leave application, Ms. Darr made it clear her condition was temporary and directly related to her supervisors' ongoing discriminatory conduct, NMDGF failure to follow disability laws and retaliation for her ongoing advocacy.

68.     On October 30, 2017, Ms. Ruiz informed Ms. Darr her grievance about her interim evaluation was not permitted.

69.     On October 31, 2017, Ms. Darr provided NMDGF and Ms. Ruiz with all documentation requested about her mental health disability. Ms. Darr's healthcare provider requested Ms. Darr's supervision be changed as an accommodation.

70.     On October 31, 2017, Mr. Cline continued his retaliation by chastising Ms. Darr over a missed deadline that occurred while Ms. Darr was on Family Medical Leave.  In violation of law, Mr. Cline instructed Ms. Darr that she could not miss another deadline without prior notice, knowing full well that prior notice was impossible when Ms. Darr had to use intermittent/ emergency Family Medical Leave for depression and anxiety flare ups.  The missed deadline was of no consequence to any grant requirement or legal obligation.

71.     On November 6, 2017, Ms. Darr again filed a grievance about her interim evaluation being retaliatory for her protected activity and exercising her rights under Family Medical Leave and disability laws after Ms. Ruiz rejected her prior grievance.  Performance issues were raised regarding the period while Ms. Darr was on Family Medical Leave.

72.     Between October 11, 2017 and November 6, 2017, Mr. Cline continued to harass and retaliate against Ms. Darr, impacting her work environment.  Mr. Cline knew Ms. Darr suffered from anxiety and depression related to his supervision.  During this time frame, Mr. Cline increased the requirement for Ms. Darr to meet with him.  Mr. Cline created a mandate only for Ms. Darr that she was required to respond to his assignments both orally and in writing.  No other NMDGF employees, including those under Mr. Cline's supervision, were required to do this.  Mr. Cline required Ms. Darr to speak with him by phone more frequently and to meet with him in-person more frequently.

73.     During this time period, the NMDGF did not meet with Ms. Darr to discuss a reasonable accommodation and did not provide a reasonable path for Ms. Darr to complain about her work environment because of the requirement to meet face to face with her direct supervisor.

74.     On November 13, 2017, Mr. Cline echoed Ms. Ruiz by rejecting Ms. Darr's grievances about his conduct because Ms. Darr failed to meet with him first. Even though the NMDGF had direct knowledge Ms. Darr's anxiety and depression were being exacerbated by the ongoing supervision of Mr. Cline, nothing was done to address Ms. Darr's workplace.

75.     Ms. Darr continued to use more Family and Medical leave and had to have leave donations from other employees so she could remain on paid status as long as possible.

76.     Despite knowing about Ms. Darr's disabling condition being exacerbated by Mr. Cline and Ms. Goldstein, the NMDGF stated Mr. Cline and Ms. Goldstein had to be part of the interactive reasonable accommodation process the NMDGF was setting up more than four months after being provided with information about Ms. Darr's disability and observing the on-going need to use Family Medical Leave time off.

77.     On November 16, 2017, Ms. Darr's lawyer again sent a letter that the NMDGF was in violation of law for failing to follow the accommodation process for disabled employees and for failing to address the ongoing retaliatory work environment. It was only after Ms. Darr's attorney sent another letter that the NMDGF permitted Ms. Darr to select Mr. Liley to engage in the interactive process.

78.     On November 17, 2017, the NMDGF conducted an accommodation process meeting with Ms. Darr. Mr. Liley and Ms. Ruiz attended for the NMDGF. This meeting was recorded by NMDGF.

79.     During the accommodation process meeting, Ms. Darr felt compelled to make a number of suggestions related to how the NMDGF could assist her. Ms. Darr suggested the pre-

ferred accommodation was a change of supervision to relieve her temporary, situational anxiety

and depression.

80.     During the interactive process, Ms. Ruiz responded to Ms. Darr's accommodation

request by stating the NMDGF could use the State Personnel Rule to separate a disabled em-

ployee involuntarily from their job.  Mr. Liley stated the request to be moved to another supervi-

sor was unique, but not impossible.  Given Ms. Ruiz's comments, Ms. Darr felt compelled to

make alternative accommodations as minor as NMDGF providing a $25 tape recorder, so she

could record her interactions with Mr. Cline and Ms. Goldstein.  Ms. Darr hoped recording

would minimize her supervisors' ability to harass, retaliate and mischaracterize interactions in

the future given the unique requirements by NMDGF of increased in-person and limited email

communication between Ms. Darr and her supervisors.  Mr. Liley also asked Ms. Ruiz if

NMDGF could search for vacant positions to allow for Ms. Darr's accommodation.  Ms. Ruiz

stated a transfer was not being considered and ended all other conversation on the topic.

81.     During the November 17, 2017 accommodation process, the NMDGF did not of-

fer one suggestion as a reasonable accommodation for Ms. Darr.

82.     On  November 28, 2017, Ms. Ruiz informed Ms. Darr that the NMDGF could not

offer an accommodation to Ms. Darr.  The NMDGF stated it would be an undue hardship to

transfer Ms. Darr to a different supervisor or provide any other accommodation, even providing a

tape recorder.

83.     Instead, Ms. Ruiz informed Ms. Darr on November 28, 2017 that the NMDGF

was implementing the involuntary separation from service in accord with State Personnel Board

rules. Ms. Ruiz informed Ms. Darr that if a position in the NMDGF could not be located, then Ms. Darr would be fired.

84.     The NMDGF never offered a workplace adjustment to Ms. Darr during the reasonable accommodation interactive meeting. The NMDGF did not continue to discuss any other accommodation possibilities with Ms. Darr after the November 17, 2017 meeting, even after Ms. Darr and her attorney pointed out the State Personnel Board rule did not apply to a temporary disability.

85.     The NMDGF required Ms. Darr to continue to work under Mr. Cline's and Ms. Goldstein's supervision if she wanted to continue her employment. NMDGF required Ms. Darr to meet with her supervisor in person and to communicate more frequently with him despite having notice of Ms. Darr's disabling condition.

86.     During this period, Mr. Cline attempted to solicit job performance complaints about Ms. Darr from her colleagues in two multi-state conservation groups outside NMDGF. Mr. Cline contacted members of these groups to solicit information about Ms. Darr's participation. The members contacted all gave positive job performance reviews and independently contacted Ms. Darr to warn her and inform her that they found Mr. Cline's actions to be unethical and unprofessional.

87.     On December 1, 2017, Ms. Darr's attorney wrote to Ms. Sandoval expressing Ms. Darr's desire to continue to work with the NMDGF and seeking intervention to prevent the NMDGF's failure to follow laws.

88.     Ms. Darr or her attorney did not receive a response from Ms. Sandoval.

89.     On December 4, 2017, Ms. Darr's healthcare provider recommended she take an extended time period off to ease her mental health condition.  Ms. Darr's healthcare provider counseled against Ms. Darr returning to work under the same supervisors who were exacerbating her mental health condition.

90.     On December 24, 2017, Ms. Darr received a letter in the mail from Ms. Ruiz that NMDGF located only one job for Ms. Darr, but Ms. Darr did not qualify for this job.  Ms. Ruiz again warned Ms. Darr that the NMDGF intended to involuntarily dismiss Ms. Darr from employment because there was not an accommodation available and no position available in NMDGF. NMDGF did not conduct a search throughout state government.  Ms Darr was unable to submit an updated resume to Ms. Ruiz because the Family Medical Leave policy and NMDGFs requirement during her extended leave did not permit Ms. Darr to use work email, computers or phones.

91.     During this time period, Ms. Darr's healthcare provider encouraged her not to return to the same situation at work because Ms. Darr risked more injury to her mental health, stating that Ms. Darr's personal and mental health were in jeopardy

92.     On January 10, 2018, Ms. Darr constructively resigned from her position with the NMDGF.  Ms. Darr could not risk further deterioration of her mental health condition because the NMDGF refused to offer an accommodation.

## COUNT I
## VIOLATIONS OF THE WHISTLEBLOWER PROTECTION ACT

93.     Plaintiff re-alleges paragraphs 1 through 92 as if set forth herein in full.

94. Ms. Darr was a public employee who engaged in protected activity during her employment with the NMDGF. Ms. Darr engaged in protected activity when she filed a grievance in accord with the Fair Pay for Women Act.

95. Ms. Darr continued to engage in protected activity through her advocacy on behalf of non game bird species when questioning the grant funding available for this program and why her grant proposals were not being acted on timely in violation of NMDGF and U.S. Fish and Wildlife rules, regulations and policies.

96. Ms. Darr was disciplined for engaging in protected activity for non game bird conservation and suspended without pay for failing to follow the chain of command when she objected to Mr. Cline's failure to respond to Ms. Darr's grant proposals increased supervision and applying workplace rules differently. Ms. Darr was issued a Letter of Reprimand for contacting Mr. Cline's, Ms. Goldstein's, and Mr. Liley's supervisor over the failure to fund and submit funding proposals on behalf of non game bird species.

97. Ms. Darr continued to engage in protected activity when she identified her temporary disability, requested Family and Medical leave and an accommodation. Ms. Darr filed a complaint with the New Mexico Human Rights Commission after the NMDGF failed to provide an accommodation and ceased to discuss Ms. Darr's accommodation after holding one meeting and then promptly denying Ms. Darr an accommodation based on an undue hardship.

98. The NMDGF permitted its supervisors to retaliate against Ms. Darr making her work environment increasing difficult and oppressive to her disabling condition. The NMDGF knew or should have known its actions would exacerbate Ms. Darr's temporary disability.

99.     The NMDGF improperly used uniformed and armed Conservation Officers to in-vestigate Ms. Darr's charges of retaliation and subject her to four hours of interrogation with full knowledge of Ms. Darr's temporary disability related to anxiety. Ms. Darr was intimidated. Ms. Darr was never provided a copy of her four hour interrogation and never received information about the result of the NMDGF investigation.

100.    The NMDGF did nothing to address Ms. Darr's hostile work environment com-plaints, and instead, the NMDGF permitted Mr. Cline to supervise Ms. Darr more closely, allow him to track Ms. Darr's time at work contrary to how other employees were treated, and permit-ted Mr. Cline to use a loud tone of voice to communicate with Ms. Darr. Mr. Cline's actions were designed to intimidate and retaliatory.

101.    Ms. Darr's work environment was hostile and retaliatory. The NMDGF did not follow State Personnel Board rules when starting the involuntary separation process when the NMDGF had knowledge Ms. Darr's disability was temporary and situational.

102.    Ms. Darr constructively discharged from her position on January 10, 2018, suffer-ing an adverse employment action, and as a direct and proximate cause of NMDGF actions, inac-tions and omissions.

103.    Ms. Darr suffered damages as a result of NMDGF's actions, inactions and omis-sions.

WHEREFORE, Ms. Darr requests she is awarded actual damages, two times the amount of back pay with interest, compensation for special damages, attorney fees and costs of litigation and all other relief deemed equitable and just.

## COUNT II
## VIOLATION OF THE FAIR PAY FOR WOMEN ACT

104.    Allegations 1 though 103 are re-alleged and reasserted as if set forth fully herein.

105.    Ms. Darr filed a complaint with the NMDGF due to being paid substantially less than a male employee performing the same job.

106.    Ms. Darr reached an agreement with the NMDGF and was provided with a merit increase instead of lost pay as provided in state law.  The NMDFG did not correctly inform Ms. Darr of her rights under the Fair Pay For Women Act ("FPFWA").

107.    The FPFWA expressly prohibits retaliation in the terms and conditions of employment for any person who files a complaint.

108.    Ms. Darr suffered retaliation from the NMDGF after she resolved her grievance with the NMDGF.  Ms. Darr was described as an exemplary employee, but once the NMDGF incompletely resolved the FPFWA claim, Ms. Darr began to suffer retaliation, including not having grant funding provided, having work rules enforced improperly and being disciplined after questioning her supervisor's inaction related to project and funding approvals.

109.    The NMDGF did not adequately investigate any of Ms. Darr's charges of retaliation and hostile work environment and attempted to conceal the FPFWA complaint resolution as a merit based pay increase and did not inform Ms. Darr about the available remedies when an employer violates the FPFWA.

110.    The NMDGF failed to address Ms. Darr's ongoing complaints regarding the change to her work environment and continued to foster the retaliatory work environment

through engaging improperly the involuntary separation process for a condition the NMDFG knew was temporary.

111.    The direct and proximate actions, inactions and commissions of the NMDGF caused Ms. Darr's constructive discharge on January 10, 2018 through its actions and inactions to address the increasingly retaliatory work environment and to permit the discriminatory environment to continue.

112.    As a result of Ms. Darr's constructive discharge, she suffered damages.

WHEREFORE, Ms. Darr requests she is awarded damages as allowed by law for retaliation, treble damages for back pay, post trial injunctive relief, attorney fees and costs of litigation and all other relief deemed equitable and just.

COUNT III
VIOLATION AGAINST THE FRAUD AGAINST TAXPAYER ACT

113.    Allegations 1 through 112 are re-alleged and reasserted as if set forth fully herein.

114.    Ms. Darr engaged in protected activity related to NMDGF improper administration of non game bird species grant funding from the U.S. Fish and Wildlife Service and state funds. Ms. Darr reasonably believed the NMDGF was not requesting and spending grant money for this program.

115.    After Ms. Darr questioned her supervisor's delay in approving grant proposals and failing to allocate grant monies available, she was disciplined. Ms. Darr continued her advocacy with the NMDGF through the Director and with the U.S. Fish and Wildlife Service.

116.    Mr. Cline continued to retaliate against Ms. Darr by trying to find job performance issues. The NMDGF changed Ms. Darr's essential job functions unilaterally to require

more direct communication with her supervisor, Mr. Cline, and after Ms. Darr requested an ac-

commodation. Mr. Cline stepped up the direct contact by suddenly requiring more verbal com-

munication. Mr. Cline contacted employees from other states about Ms. Darr's work on multi-

state task forces. Mr. Cline required Ms. Darr to make more effort than other employees about

her schedule changes, time off and breaks.

117.    The NMDGF violated State Personnel Board rules by initiating the involuntary

separation process even though Ms. Darr's disabling condition was temporary in violation of

state regulation.

118.    The NMDGF violated state law, NMSA 1978, 17-2-19, by requiring Ms. Darr to

be interrogated by two uniformed and armed Conservation Officers about her allegations of a

hostile work environment and retaliation. Ms. Darr never received information about the out-

come of this "investigation".

119.    As a result of the direct and proximate actions of the NMDGF, Ms. Darr construc-

tively discharged from her position on January 10, 2018.

120.    Ms. Darr suffered damages as a result of her protected activities and constructive

discharge.

121.    The NMDGF caused Ms. Darr to incur punitive damages for the reckless behavior

of the NMDGF through the willful ignoring of the NMDGF's responsibilities in accord with dis-

abled employees, including requiring Ms. Darr to have more contact with the Supervisors she

alleged was causing her temporary mental health condition, failing to continue to engage the in-

teractive accommodation process, not properly investigating the charges related to improper

funding of non game bird species being underfunded, and taking steps to involuntarily separate

Ms. Darr from service with full knowledge her disabling condition was temporary and that the State Personnel Board was inapplicable.

WHEREFORE, Ms. Darr requests she is awarded whole damages, two times the amount of back pay with interest, special damages, punitive damages, attorney fees and costs of litigation and all other relief deemed equitable and just.

COUNT IV
VIOLATION OF THE NEW MEXICO HUMAN RIGHTS ACT DISABILITY

122.    Ms. Darr re-alleges and reasserts allegations 1 though 121 as if set forth fully herein.

123.    Ms. Darr suffered from a temporary mental health disability related to clinical depression and anxiety.  Ms. Darr identified her disability including when she applied for and received Family Medical Leave benefits.

124.    Ms. Darr returned from Family Medical Leave and requested the NMDGF to engage in an interactive process for an accommodation.

125.    The NMDGF did not act timely to address Ms. Darr's reasonable accommodation request.  The NMDGF did not act on its perception related to Ms. Darr's need for accommodation when it approved the Family Medical Leave application.

126.    Ms. Darr made three separate requests for a reasonable accommodation interactive process to be conducted.

127.    Instead of engaging Ms. Darr in a reasonable accommodation interactive process, the NMDGF changed Ms. Darr's essential job functions to require her to meet and communicate

more frequently with her Supervisors despite having full knowledge that Ms. Darr's disability would be exacerbated.

128.    When the NMDGF finally provided an interactive accommodation discussion, the NMDGF refused to provide a temporary transfer to a different supervisor. Mr. Liley stated in the reasonable accommodation process that a job restructure and a different supervisor could be arranged; Ms. Ruiz, ended all conversation about accommodation in the form of a supervisor transfer or position transfer.

129.    Ms. Darr was compelled to ask for alternative accommodations as minor as a $25 tape recorder so she could try to play back her conversations with Mr. Cline to ease her anxiety. The NMDGF declared it was an undue hardship to change Ms. Darr's supervisor or provide any other accommodation, including as minor as providing Ms. Darr with a tape recorder.

130.    The NMDGF never provided Ms. Darr with a reasonable accommodation.

131.    The NMDGF held one meeting to discuss Ms. Darr's reasonable accommodation and did not continue the discussion despite Ms. Darr's attempts and the legal requirement to do so. NMDGF's claim on undue hardship is not legitimate.

132.    Instead, the NMDGF informed Ms. Darr it would use the State Personnel Board rule to involuntarily separate Ms. Darr from service even though the NMDGF knew Ms. Darr's disability was temporary and the involuntary separation from service rule was inapplicable.

133.    Ms. Darr filed a charge of discrimination based on her disability and the NMDGF's failure to accommodate. Ms. Darr exhausted her administrative remedies on March 13, 2018.

134.    The direct and proximate actions of the NMDGF caused Ms. Darr to constructive-ly discharge from her employment on January 10, 2018.

135.    Ms. Darr suffered damages as a result of her constructive discharge.

WHEREFORE, Ms. Darr requests she is awarded back wages, lost wages, compensatory dam-ages, attorney fees and costs and all other relief deemed equitable and just.

## COUNT V
## VIOLATION OF THE NEW MEXICO HUMAN RIGHTS ACT RETALIATION

136.    Ms. Darr re-alleges and reasserts the allegations contained in paragraphs 1 to 135 as if set forth fully herein.

137.    After Ms. Darr informed the NMDGF of her temporary disability, she suffered retaliation. Ms. Darr suffered from a temporary disability related to mental health and NMDGF engaged in behavior to allow Ms. Darr's supervisors to require more contact with them, to have armed and uniformed Conservation Officers conduct a four hour interrogation in violation of state law without providing Ms. Darr with any information about the outcome, and not reviewing Ms. Darr's charges about conservation funding for non game bird species.

138.    The NMDGF changed Ms. Darr's essential job functions to require more contact with her supervisors after Ms. Darr made a reasonable accommodation meeting request and with full knowledge more contact exacerbated her temporary disability.

139.    The NMDGF failed to conduct a reasonable accommodation meeting timely, re-quiring Ms. Darr to continue to contact Ms. Ruiz for assistance.

140.    The NMDGF failed to provide Ms. Darr with an accommodation.

141.    The NMDGF's claim of undue hardship is not legitimate and is unreasonable.

142.    The NMDGF started the involuntary separation process in violation of State Personnel Board rules because Ms. Darr's disability was temporary.

143.    Ms. Darr exhausted administrative remedies on March 13, 2018.

144.    As a direct and proximate result of NMDGF's actions, inactions and commissions, Ms. Darr suffered from a hostile work environment on the basis on retaliation.

145.    Ms. Darr suffered damages as a result of NMDGF's retaliation.

146.    Ms. Darr constructively discharged on January 10, 2018.

WHEREFORE, Ms. Darr requests she is awarded back wages, compensatory damages, attorney fees and costs of litigation and all other relief deemed equitable and just.


Respectfully submitted,


*s/Diane Garrity*

_____

Diane Garrity
Serra & Garrity, P.C.
1331 Seville Road
Santa Fe, New Mexico 87505
505-983-6956 o
505-470-4803 m
dgarrity@sgmnmlaw.com
Attorney for Plaintiff

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/13/2018 4:12 PM
STEPHEN T. PACHECO
Jennifer Romero

**4-206. Summons.**

<table>
<tr><td colspan="2" align="center">**SUMMONS**</td></tr>
<tr>
<td>District Court: FIRST JUDICIAL<br>Santa Fe County, New Mexico<br>Court Address: Post Office Box 2268<br>225 Montezuma<br>Santa Fe, New Mexico  87504-2268 / 87501<br>Court Telephone No.: 505-455-8250</td>
<td>**Case Number: D-101-CV-2018-01708**<br><br><br>Assigned Judge: Gregory S. Shaffer</td>
</tr>
<tr>
<td>Plaintiff(s):  **MARGARET DARR**<br><br>v.<br>Defendant(s):   New Mexico Department of Game and Fish</td>
<td>Defendant: **NM Department of Game and Fish**<br><br>Name:     Hector Balderas<br>              Attorney General<br>Address:  408 Galisteo Street<br>              Santa Fe, NM  87501</td>
</tr>
</table>

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that:

**1.**     A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

**2.**     You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Court's address is listed above.

**3.**     You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

**4.**     If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

**5.**     You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

**6.**     If you need an interpreter, you must ask for one in writing.

**7.**     You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, this  13   day of June, 2018.

STEPHEN T. PACHECO
CLERK OF DISTRICT COURT

By /s/ Jennifer
   Deputy

/s/ Diane Garrity

_____
Signature of Attorney for Plaintiff/Pro Se Party
Name:        Diane Garrity, Esq.
Address:     1331 Seville, Santa Fe, NM 87505
Telephone No.:  505-983-6956
Email Address:  dgarrity@sgmnmlaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

# RETURN[1]

STATE OF NEW MEXICO )
                              )ss
COUNTY OF _____ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]    to _____ *(name of person)*, _____ , *(title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision).*

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____ [2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

## USE NOTE

1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/13/2018 4:12 PM
STEPHEN T. PACHECO
Jennifer Romero

**4-206. Summons.**

<table>
<tr><td colspan="2"><b>SUMMONS</b></td></tr>
<tr>
<td>District Court: FIRST JUDICIAL<br>Santa Fe County, New Mexico<br>Court Address: Post Office Box 2268<br>225 Montezuma<br>Santa Fe, New Mexico  87504-2268 / 87501<br>Court Telephone No.: 505-455-8250</td>
<td><b>Case Number: D-101-CV-2018-01708</b><br><br><br>Assigned Judge: Gregory S. Shaffer</td>
</tr>
<tr>
<td>Plaintiff(s): <b>MARGARET DARR</b><br><br>v.<br>Defendant(s): NEW MEXICO DEPARTMENT<br>OF GAME AND FISH</td>
<td>Defendant: <b>NM DEPARTMENT OF<br>GAME AND FISH</b><br><br>Name:    Alexa Sandoval<br>          Director<br>Address: 1 Wildlife Way<br>          Santa Fe, NM  87507</td>
</tr>
</table>

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that:

**1.**    A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

**2.**    You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

**3.**    You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

**4.**    If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

**5.**    You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

**6.**    If you need an interpreter, you must ask for one in writing.

**7.**    You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, this _13_ day of June, 2018.

STEPHEN T. PACHECO
CLERK OF DISTRICT COURT

By: _____
        Deputy

*/s/ Diane Garrity*
_____
Signature of Attorney for Plaintiff/Pro Se Party
Name:        Diane Garrity, Esq.
Address:        1331 Seville, Santa Fe, NM 87505
Telephone No.: 505-983-6956
Email Address: dgarrity@sgmnmlaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

# RETURN[1]

STATE OF NEW MEXICO  )
                         )ss
COUNTY OF _____  )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]    to _____, an agent authorized to receive service of process for defendant _____.

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]    to _____ (*name of person*), _____ , (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____ [2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

## USE NOTE

1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/13/2018 4:19 PM
STEPHEN T. PACHECO
Jennifer Romero

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**No. D-0101-CV-2018-01708**

**MARGARET DARR,**

      **Plaintiff,**

**v.**

**NEW MEXICO DEPARTMENT OF GAME AND FISH,**

      **Defendant.**

**COMPLAINT FOR VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT
FOR DISABILITY DISCRIMINATION AND RETALIATION,  RETALIATION FOR
VIOLATIONS OF THE FAIR PAY FOR WOMEN ACT, WHISTLEBLOWER
PROTECTION ACT AND FRAUD AGAINST THE TAXPAYER ACT**

## SIX PERSON JURY DEMAND

      COMES NOW, Plaintiff and requests that a six person jury consider her Complaint.

Respectfully submitted,

*s/Diane Garrity*

_____
Diane Garrity
Serra & Garrity, P.C.
1331 Seville Road
Santa Fe, New Mexico 87505
505-983-6956 o
505-470-4803 m
dgarrity@sgmnmlaw.com
Attorneys for Plaintiff

XC: Jury

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/19/2018 7:22 AM
STEPHEN T. PACHECO
Jasmin Lopez

*Return*

DISTRICT COURT CLE
6/13/2018 4:12
STEPHEN T. PACHE
Jennifer Ron

**4-206. Summons.**

| SUMMONS | |
|---|---|
| District Court: FIRST JUDICIAL<br>Santa Fe County, New Mexico<br>Court Address: Post Office Box 2268<br>225 Montezuma<br>Santa Fe, New Mexico  87504-2268 / 87501<br>Court Telephone No.: 505-455-8250 | Case Number: D-101-CV-2018-01708<br><br>Assigned Judge: Gregory S. Shaffer |
| Plaintiff(s): **MARGARET DARR**<br><br>v.<br>Defendant(s): NEW MEXICO DEPARTMENT<br>OF GAME AND FISH | Defendant: **NM DEPARTMENT OF GAME AND FISH**<br><br>Name:   Alexa Sandoval<br>          Director<br>Address: 1 Wildlife Way<br>          Santa Fe, NM  87507 |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that:

1.      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

2.      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.      You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, this __13__ day of June, 2018.

STEPHEN T. PACHECO
CLERK OF DISTRICT COURT

By: _____
       Deputy

/s/ Diane Garrity

Signature of Attorney for Plaintiff/Pro Se Party
Name:      Diane Garrity, Esq.
Address:   1331 Seville, Santa Fe, NM 87505
Telephone No.: 505-983-6956
Email Address: dgarrity@sgmnmlaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

# RETURN[1]

STATE OF NEW MEXICO   )
                                        )ss
COUNTY OF _Santa Fe_  )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _Santa Fe_ county on the _1st_ day of _June_, _2018_, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

## (check one box and fill in appropriate blanks)

[ ]    to the defendant _____ (used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (used when service is by mail or commercial courier service).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____ (used when the defendant is not presently at place of abode) and by mailing by first class mail to the defendant at _____ (insert defendant's last known mailing address) a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (insert defendant's business address) and by mailing the summons and complaint by first class mail to the defendant at _____ (insert defendant's last known mailing address).

[X]    to _Mike Thomas_, an agent authorized to receive service of process for defendant _Alexa Sandoval, NMDGF, 1 Wildlife Way, Santa Fe NM 87507_

[ ]    to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (used when defendant is a minor or an incompetent person).

[ ]   to _____ *(name of person)*, _____ *, (title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision).*

Fees: $125.00

_____
Signature of person making service

_____
Title *(if any)*

Subscribed and sworn to before me this *18* day of *June*, 20 2

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

OFFICIAL SEAL
JANE B. LARSON
Notary Public
State of New Mexico
My Comm. Expires 9/21/20

## USE NOTE

1.      Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.      If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

FILED IN MY OFFICE
DISTRICT COURT CLERK
6/19/2018 7:22 AM
STEPHEN T. PACHECO
Jasmin Lopez



DISTRICT COURT CLE
6/13/2018 4:12
STEPHEN T. PACHE
Jennifer Ror

4-206. Summons.

## SUMMONS

| | |
|---|---|
| District Court: FIRST JUDICIAL Santa Fe County, New Mexico Court Address: Post Office Box 2268 225 Montezuma Santa Fe, New Mexico  87504-2268 / 87501 Court Telephone No.: 505-455-8250 | Case Number: D-101-CV-2018-01708 Assigned Judge: Gregory S. Shaffer |
| Plaintiff(s):  MARGARET DARR v. Defendant(s):   New Mexico Department of Game and Fish | Defendant: NM Department of Game and Fish Name:     Hector Balderas Attorney General Address:  408 Galisteo Street Santa Fe, NM  87501 |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that:

1. A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

2. You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Court's address is listed above.

3. You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4. If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5. You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6. If you need an interpreter, you must ask for one in writing.

7. You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Santa Fe, New Mexico, this _13_ day of June, 2018.

STEPHEN T. PACHECO
CLERK OF DISTRICT COURT

By /Jennifer/
   Deputy

/s/ Diane Garrity

Signature of Attorney for Plaintiff/Pro Se Party
Name:       Diane Garrity, Esq.
Address:    1331 Seville, Santa Fe, NM 87505
Telephone No.: 505-983-6956
Email Address: dgarrity@sgmnmlaw.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN**[1]

STATE OF NEW MEXICO  )
                     )ss
COUNTY OF Sante Fe )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _Santa Fe_ county on the _15th_ day of _June_, _2018_, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]   to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]   to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]   to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ]   to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[X]   to _Ann Rios_, an agent authorized to receive service of process for defendant _NM AGO_.

[ ]   to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of _____ (*used when defendant is a minor or an incompetent person*).

STATE OF
NEW MEXICO

POLICY & PUBLIC AFFAIRS
CONSUMER & FAMILY ADVOCACY SERVICES

**DANIEL RIOS**
INTAKE ADVOCATE

P.O DRAWER 1508
SANTA FE, NEW MEXICO 87504

PHONE: (505) 490-4060
E-MAIL: drios@nmag.gov
www.nmag.gov

OFFICE OF THE
ATTORNEY GENERAL

[ ]   to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: $125.00

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _15_ day of _June_, 2018

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

OFFICIAL SEAL
JANE B. LARSON
Notary Public
State of New Mexico
My Comm. Expires _9/21/20_

## USE NOTE

1.   Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.   If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]