IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARGARET DARR,

      Plaintiff,

v.                            Case No.: 1:18-cv-00672-GBW-SCY

NEW MEXICO DEPARTMENT
OF GAME AND FISH,

      Defendant.

**MEMORANDUM IN SUPPORT OF NEW MEXICO DEPARTMENT OF GAME AND
FISH'S MOTION TO DISMISS COUNT II OF PLAINTIFF'S COMPLAINT**

Defendant New Mexico Department of Game and Fish ("NMDGF") submits this memorandum in support of its Rule 12(b)(1) and (6) Motion to Dismiss the Fair Pay for Women Act Claim, or Count II of Plaintiff Margaret Darr's ("Plaintiff") Complaint, because the Act does not apply to State Agencies and NMDGF is immune from suit under the Act. In support of its Motion, NMDGF states:

## I.    INTRODUCTION

Plaintiff filed her Complaint in New Mexico state district court on June 8, 2018, alleging in Count II that NMDGF discriminated against her on the basis of gender in violation of New Mexico's Fair Pay for Women Act, NMSA 1978, Section 28-23-1 to -6 (2013) (the "Act" or "FPWA"). NMDGF removed the action on July 13, 2018 [Doc. 1] on the basis of federal question jurisdiction of Plaintiff's Family Medical Leave Act claim, with supplemental jurisdiction over the state law claims because all of Plaintiff's allegations arise from a common nucleus of operative fact. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 157 (1997). Count II of Plaintiff's Complaint against NMDGF, however, should be dismissed in its entirety because the Legislature has not expressed intent to waive the State's immunity for this statutory claim to include the State as a potential defendant-employer under the Act. Plaintiff's related claim against NMDGF for

punitive damages should also be dismissed because such damages cannot be awarded against a state agency, such as NMDGF, absent an express legislative directive.

## II.    STANDARD FOR DISMISSAL

### A.  Rule 12(b)(1) Standard

Subject matter jurisdiction is "the power to adjudicate the general questions involved in the claim and is not dependent upon the state of facts which may appear in a particular case, or the ultimate existence of a valid cause of action." *Gonzales v. Surgidev Corp.,* 1995-NMSC-036, ¶ 12, 120 N.M. 133, 138 (explaining that whether a court has subject matter jurisdiction depends upon whether the claim the plaintiff "advances falls within the general scope of authority conferred upon such court by the constitution or statute."); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) ("subject-matter jurisdiction, *i.e.* the courts' statutory or constitutional power to adjudicate the case"). The issue of governmental immunity is jurisdictional in nature. *See Handmaker v. Henney,* 1999-NMSC-043, ¶ 14, 128 N.M. 328; *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Thus, a dismissal for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). is appropriate where a plaintiff's claim is barred by the State's immunity to unconsented claims. *Ping Lu v. Educ. Trust Bd.,* 2013-NMCA-010, ¶ 10 (internal quotation marks and citation omitted (noting that the Rule 12(B)(1) motion to dismiss may be appropriate "when the plaintiff's claim is barred by one of the various aspects of the doctrine of sovereign immunity.")).

### B.  Rule 12(b)(6) Standard

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir.1994). The sufficiency of a complaint is a question of law, and when ruling on a rule 12(b)(6) motion, a court must accept

as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *Moore v. Guthrie,* 438 F.3d 1036, 1039 (10th Cir.2006); *Hous. Auth. of Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir.1991).

Plaintiff's burden to set forth the grounds of her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 546, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (stating that a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. at 545, 127 S.Ct. 1955 (citation omitted). To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. 1955; *Mink v. Knox,* 613 F.3d 995 (10th Cir.2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10th Cir.2007). The Tenth Circuit has held:

"[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008) (citations omitted).

## III.   NEW MEXICO DEPARTMENT OF GAME & FISH IS IMMUNE FROM SUIT UNDER THE FAIR PAY FOR WOMEN ACT BECAUSE SOVEREIGN IMMUNITY HAS NOT BEEN EXPRESSLY WAIVED AND THE CURRENT LANGUAGE OF THE ACT DOES NOT APPLY TO STATE AGENCIES.

No statute or law authorizes the New Mexico agency of NMDGF to be sued under the Fair Pay for Women Act and Plaintiff has not proven that immunity has been waived. *Wells Fargo Bank, Nat. Ass'n v. Se. New Mexico Affordable Hous. Corp.*, 877 F. Supp. 2d 1115, 1133 (D.N.M. 2012) ("the party bringing suit against the United States bears the burden of proving that sovereign immunity has been waived . . . The United States' agencies also have sovereign immunity absent a waiver"). NMDGF has sovereign immunity from suit in this action because the current plain language of the Act does not expressly waive its immunity as required under New Mexico law, and only the Legislature can create such a waiver and thereby create a new cause of action.

The absence of any reference to the State, its agencies, or its employees as potentially liable parties within a statute's definitional or jurisdictional sections has been repeatedly interpreted by New Mexico's appellate courts as an indication that the Legislature did not intend to waive the State's sovereign immunity or to subject the State to suit under a particular statute. *See, e.g., Cedrins v. Santa Fe Cmty. Coll.,* 2010 WL 4923952 (N.M. Ct. App. Oct. 13, 2010) (affirming dismissal of plaintiff's claim under the Unfair Practices Act ("UPA"), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2009), because state entities are not defined as "persons" under the UPA); *Torrance Cnty. Mental Health Program, Inc. v. N.M. Health & Envir. Dep't,* 1992-NMSC-

026, ¶ 19, 113 N.M. 593, 601 (noting that legislative silence cannot be read as expressing the intent to waive the State's immunity to punitive damages in contract actions).

The Fair Pay for Women Act contains no language from which to conclude that the Legislature intended: (1) to waive the State's sovereign immunity and allow suits against the State by a private party, or (2) to create a cause of action against the State as an "employer" for an alleged violation of the Act.

The Fair Pay for Women Act provides:

> *[n]o employer* shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in the establishment at a rate less than the rate that the employer pays wages to employees of the opposite sex in the establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility and that are performed under similar working conditions, except where the payment is made pursuant to a:
>
> (1) seniority system;
>
> (2) merit system; or
>
> (3) system that measures earnings by quantity or quality of production.

NMSA 1978, § 28-23-3(A) (2013).

The Act defines an "employer," subject to the Act's prohibitions, as "a *person* employing four or more employees and any *person* acting for an employer." NMSA 1978, § 28-23-2(E) (2013) (emphasis added). An "employee" entitled to sue an "employer" is defined within the Act as "any *individual* employed by an employer." NMSA 1978, § 28-23-2 (D) (2013) (emphasis added). Neither the term "person" nor "individual" is defined within the Fair Pay for Women Act. The term "person" is, however, defined within New Mexico's Uniform Statute and Rule Construction Act ("Construction Act"), NMSA 1978, 12-2A-1 to -2A-20 (1997). The Construction Act defines "person" to include "*individual[s]*, corporation[s], business trust[s], estate[s], trust[s], partnership[s], limited liability compan[ies], association[s], joint venture[s] or any legal or

commercial entit[ies]," but does not include the State or its agencies. NMSA 1978, § 12-2A-3(E). Instead, the Construction Act separately defines the term "state" to mean, "a state of the United States, the District of Columbia, the Commonwealth of Puerto Rico or any territory or insular possession subject to the jurisdiction of the United States." NMSA 1978, § 12-2A-3(M). By defining "state" and "person" independently, the Construction Act demonstrates that the terms are not synonymous, and that the term "person" cannot be read to include the "State" or its agencies.

The Fair Pay for Women Act lacks any indication that the Legislature chose to waive the State's sovereign immunity or intended the State's consent to be sued as an "employer" under this specific Act. Accordingly, express exclusion of state employees is not necessary because the State cannot be sued unless there has been an affirmative, express waiver.

### A. Absent an Express Waiver of the State's Sovereign Immunity, NMDGF is Immune to Suits Brought Under the Fair Pay for Women Act.

NMDGF is a State agency, organized under NMSA 1978, Sections 17-1-1, *et seq.*, charged with the protection of New Mexico's game and fish and is considered to be "the State" for purposes of the immunity analysis. *See Dunn v. State ex rel. Taxation & Revenue Dep't, Motor Vehicle Div*., 1993-NMCA-059, ¶ 20, 116 N.M. 1, 6 (recognizing that a "claim against an agency of the [S]tate constitutes a suit against the [S]tate"); NMSA 1978, § 17-1-1 (declaration of policy). As such, NMDGF is immune to suit under the Fair Pay for Women Act.

The State, its agencies, and its employees are immune to suit absent an express legislative directive. In *Hicks v. State*, the New Mexico Supreme Court abolished common-law sovereign immunity for tort actions brought against the State and its agencies. *Hicks v. State,* 1975-NMSC-056, 88 N.M. 588. In 1976, following the New Mexico Supreme Court's decision in *Hicks*, the Legislature enacted the Tort Claims Act ("TCA"), NMSA 1978, Section 41–4–1 to –29 (1976), and declared it to be "the public policy of New Mexico that governmental entities and public

6

employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act." NMSA 1978, § 41-4-2 (A) (1976); *see Marrujo v. New Mexico State Highway Transp. Dept*, 1994-NMSC-116, ¶ 24, 118 N.M. 753, 755 ("The right to sue the government is a statutory right and the [L]egislature can reasonably restrict that right."). In that same year, the Legislature also enacted NMSA 1978, Section 37-1-23 (1976), which recognized and re-imposed governmental immunity for contractual actions. *See* § 37-1-23; *see also Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 18, 110 N.M. 173, 178 (discussing the State's limited waiver of its existing sovereign immunity under § 37-1-23). After the Legislature's statutory response to *Hicks*, the State, its agencies, and its employees are immune to suit absent an express legislative directive. In addition to the TCA and the contract waiver statute, the Legislature has also made it clear when and under what circumstances the State may be sued under the New Mexico Human Rights Act ("NMHRA"), NMSA 1978, § 28-1-2 to -1-14 (2000); the New Mexico Minimum Wage Act ("MWA"), NMSA 1978, § 50-4-19 to -4-30 (1955, as amended through 2007) and the Whistleblower Protection Act ("WPA"),[1] NMSA 1978, § 10-16C-1 to -1-6 (2010).

In enacting the NMHRA, the Legislature expressed its intent to waive the State's sovereign immunity when it declared that "*the state shall be liable the same as a private person*" and included "the state and all of its political subdivisions" within its definition of "person." NMSA 1978, § 28-1-13(D) (2005); NMSA 1978, § 28-1-2 (A) (2007); s*ee Luboyeski v. Hill*, 1994 -NMSC-032, ¶ ¶ 10, 14-15, 17 N.M. 380, 384-85 (distinguishing the NMHRA from other state statutes not providing an express waiver of sovereign immunity and holding "that sovereign immunity has been waived by the Human Rights Act to the extent needed to permit recovery under the Act against the state and its political subdivisions").

---

[1] The WPA defines "employer" to include any department, agency, office, political subdivision of the state, or entity of the state as well as an "official" of such entities.

The MWA is another example of an express and evolving legislative decision on the contours of such waivers. The MWA, as originally enacted, defined an "employer" as:

> any individual, partnership, association, corporation, business trust, legal representative or any organized group of persons employing one or more employees at any one time, acting directly or indirectly in the interest of an employer in relation to any employee, but shall not include the United States, *the state or any political subdivision thereof*[.]

NMSA 1978, Section 50-4-20(B) (1955) (emphasis added). The Legislature amended this definition in 2007,[2] and "employer" is now defined as:

> any individual, partnership, association, corporation, business trust, legal representative or any organized group of persons employing one or more employees at any one time, acting directly or indirectly in the interest of an employer in relation to an employee, *but shall not include the United States*, *the state or any political subdivision of the state*; *provided, however, that for the purposes of [Section 50-4-22(A)] . . . an 'employer' includes the state or any political subdivision of the state*[.]

NMSA 1978, § 50-4-21(B) (2008) (emphasis added). An "employee" is defined in a similar manner and specifically excludes "*an individual employed by* the United States, *the state or any political subdivision of the state*;" except that for the narrow purposes of Section 50-4-22(A) (requiring payment of the minimum wage), an "employee" includes an "*individual employed by the state or any political subdivision of the state*." NMSA 1978, § 50-4-21(C) (3) (2008) (emphasis added).  The Legislature's amendments to the MWA stand in sharp contrast to the legislative silence regarding the State's susceptibility to suit under the Fair Pay for Women Act.

Unlike the NMHRA, the TCA, the MWA and the WPA, where the Legislature carefully and expressly carved out areas where the State might be liable and subject to suit on these statutory claims, the Fair Pay for Women Act contains no such expression of intent and was created after such other laws were enacted. The near forty years since the TCA and numerous demonstrations of express legislative intent, show that the Legislature's silence regarding waiver of immunity

---

[2]  The legislature amended the statute in 2007, and the amendment became effective in 2008.

under the subject FPWA is purposeful. Without such a waiver, this Court may not exercise jurisdiction over NMDGF under the Fair Pay for Women Act.

**B.      The State or its Agencies are Not Included Within the Act's Definition of "Employer" Subject to Suit.**

Adjacent to the subject matter jurisdiction issue, but arising more in the context of a 12(B)(6) failure to state a claim, is the Act's failure to include the State or its agencies, such as NMDGF, in the Act's definition of "employer." Courts are reluctant to include the State in a statute's definition of "employer" or "person" or "entity" unless the legislative intent to include the State is clear and unambiguous within the language of the statute itself. *See Stansell*, 2009-NMCA-062, ¶¶ 11-12, 146 N.M. at 420-21 (dismissing claim because government entities were not expressly included within statutory definition of a "person" subject to suit). Notably absent from the Fair Pay for Women Act's definition of "employer" and "employee" is *any* reference to the State, its agencies, or its employees. The lack of *any* reference to the State or its agencies compels the conclusion that the Legislature did not intend to include the State or its agencies in the universe of potential defendants under the Fair Pay for Women Act.

New Mexico courts have endorsed the general rule that "absent express words to the contrary, neither the [S]tate nor its subdivisions are included within [the] general words of a statute." *Lucero v. Richardson & Richardson, Inc.*, 2002-NMCA-013, ¶ 11, 131 N.M. 522, 526; *see Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000) (recognizing the "longstanding interpretive presumption that 'person' does not include the sovereign"). In *Stansell v. New Mexico Lottery*, the New Mexico Court of Appeals examined whether the New

Mexico Lottery[3] was a "person"[4] subject to suit under New Mexico's Unfair Practices Act ("UPA"). *Stansell*, 2009-NMCA-062, 146 N.M. 417. Despite the UPA's expansive definition of "person," the Court of Appeals held that the absence of any reference to the State, its agencies, or political subdivisions coupled with the New Mexico Lottery's status as a governmental instrumentality under NMSA 1978, § 6–24–5(A) (1995, as amended through 2007), mandated the conclusion that the Legislature *did not* intend for the UPA to apply to governmental instrumentalities. *Stansell*, 2009-NMCA-062, ¶¶ 11-12, 146 N.M. at 418, 420-21. In affirming the dismissal of the plaintiff's claims, the court noted that had the Legislature wanted to subject government entities to suit under the UPA it could have done so and, thus, the absence of any reference to the State or governmental entities within the UPA precluded the court from allowing such claims. *Stansell*, 2009-NMCA-062, ¶ 12, 146 N.M. at 420-21.

Just as the Legislature's decision not to include the State, its agencies, or political subdivisions as potential defendants under the UPA was given effect in *Stansell*; so too should the Legislature's decision not to include the State or its agencies within the Fair Pay for Women Act's definitions of "employer" be given effect here. *See, e.g., Rutherford v. Chaves County*, 2003–NMSC–010, ¶ 11, 133 N.M. 756 (discussing that, when interpreting the meaning of a statute, a court's "primary purpose is to give effect to the Legislature's intent."); s*ee also Stansell*, 2009-NMCA-062, ¶ 12, 146 N.M. at 421 ("Since the Legislature did not include any governmental body or the [State] Lottery within the UPA's definition of 'person,' the [State] Lottery is not subject to the UPA."); *Lucero*, 2002-NMCA-013, ¶ 11, 131 N.M. at 526.

---

[3] The New Mexico Lottery is a public body that is authorized to function like a corporate entity but is still considered a governmental entity. *Stansell*, 2009-NMCA-062, ¶¶ 11-12, 146 N.M. at 418; *see also* NMSA 1978, §§ 6–24–5(A) ("There is created a public body, politic and corporate, separate and apart from the state, constituting a governmental instrumentality to be known as the 'New Mexico lottery authority'".).

[4] *See* NMSA 1978, § 57-12-2 (A) (2009) (defining a "person" as "natural persons, corporations, trusts, partnerships, associations, cooperative associations, clubs, companies, firms, joint ventures or syndicates").

In interpreting the current and plain language of the Act, this Court should conclude that the legislation does not include the State or its agencies within the totality of "employers" subject to liability for its violation, and that dismissal is warranted. *See, e.g., Saavedra v. Lowe's Home Centers, Inc.,* 748 F. Supp. 2d 1273, 1298 (D.N.M. 2010) (dismissing the plaintiff's ADA claims against a particular defendant for failure to state a claim where the individual defendant did not fall within the ADA's definition of employer).

C.     **The NMDGF, an Agency of The State, Cannot be Subject to Punitive Damages**.

The Act provides that an "employer who [is found to have violated] a provision of the Fair Pay for Women Act may . . . be liable to the employee for punitive damages." *See* NMSA 1978, § 28-23-6(C). The Act's provision of punitive damages is one more basis for the inescapable conclusion that the Legislature did not intend to make the State liable for any alleged violations of the Act.

In New Mexico, punitive damages are not recoverable against a governmental entity absent an express legislative provision. *See State ex rel. N.M. State Hwy. & Transp. Dep't v. Baca*, 1995-NMSC-033, 120 N.M. 1, 896 P.2d 1148; *Torrance*, 1992-NMSC-026, ¶¶ 29, 32, 113 N.M. at 601 (holding that punitive damages may not be awarded against the State in a breach of contract action, absent an express legislative provision authorizing such damages). The disfavor in which punitive awards against the State are held stems from the fact that an award of punitive damages against the State inevitably punishes the innocent taxpayers and depletes the public treasury. *See Brown v. Village of Deming*, 1952-NMSC-042, ¶ 32, 56 N.M. 302, 317 (noting that absent statutory language providing for exemplary or punitive damages against a government entity, such damages may not be awarded); *see also Lopez v. Las Cruces Police Dep't,* 2006-NMCA-054, ¶ 13, 139 N.M. 730 (expressly providing that in the context of the TCA, no judgment against a government

entity or public employee shall include punitive damages). Punitive damages against the State are disfavored and are contrary to the State's long recognized immunity to such damages without an express waiver. *See, e.g., Torrance*, 1992-NMSC-026, ¶ 31,113 N.M. at 601 (refusing to allow punitive damages against the State where the [limited statutory waiver of the State's immunity to contract claims] did not expressly provide for such damages). Despite express waivers of sovereign immunity, none of the statutes detailed above include any language compelling the State to pay punitive damages.

In the absence of language expressly authorizing punitive damages against the State, Plaintiff cannot recover punitive damages against NMDGF and Plaintiff's claim for punitive damages under the Fair Pay for Women Act should be dismissed. *See Torrance*, 1992-NMSC-026, ¶ 31, 113 N.M. at 601 (concluding that despite the fact that Section 37-1-23 was silent on whether punitive awards could be awarded against the State, the court could not ignore the legislative declaration prohibiting such damages against the State in tort cases and refusing to conclude that § 37-1-23 allowed for punitive damages against the State).

## IV.    CONCLUSION

For the foregoing reasons, NMDGF respectfully requests that this Court dismiss Count II of Plaintiff's Complaint and any related claims for punitive damages with prejudice.

Respectfully submitted,

MILLER STRATVERT P.A.

By: */s/ Paula G. Maynes*
Paula G. Maynes
Stephen M. Williams
***Attorneys for Defendant***
200 West DeVargas, Suite 9
Santa Fe, New Mexico 87501
Telephone: (505) 989-9614
Email pmaynes@mstlaw.com
          swilliams@mstlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed through the CM/ECF system which caused all counsel of record to be served by electronic means on this 30th day of July 2018:

Diane Garrity                              Rosario D. Vega Lynn
Serra & Garrity, P.C.                      Vega Lynn Law Offices, LLC
1331 Seville Road                          P.O. Box 65513
Santa Fe, New Mexico 87505                 Albuquerque, NM 87193
(505) 983-6956                             (505) 903.9411
(505) 4704803 *m*                          rosariovegalynnlawfirm@outlook.com
dgarrity@sgmnmlaw.com                      *Attorneys for Plaintiff*
*Attorneys for Plaintiff*


  /s/ Paula G. Maynes
Paula G. Maynes