# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARGARET DARR,

       Plaintiff,

vs.                                             No. CIV 18-0672 JB\SCY

NEW MEXICO DEPARTMENT
OF GAME AND FISH,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Opposed Motion for Remand and Memorandum in Support, filed July 19, 2018 (Doc. 6)("Motion"). The Court held a hearing on September 25, 2018. The primary issue is whether the Court has federal-question jurisdiction over Plaintiff Margaret Darr's claims against Defendant New Mexico Department of Game and Fish ("NM Game & Fish"). The Court will grant the Motion. The allegations in Darr's Complaint for Violations of the New Mexico Human Rights Act for Disability Discrimination and Retaliation, Retaliation for Violations of the Fair Pay for Women Act, Whistleblower Protection Act, and Fraud Against the Taxpayers Act, filed in state court June 15, 2018, filed in federal court July 13, 2018 (Doc. 1-1)("Complaint"), do not present a substantial federal question. The Complaint alleges that NM Game & Fish retaliated against Darr for engaging in protected activity, to include leave taken under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 through 2654 ("FMLA"), in violation of four New Mexico statutes: (i) the Whistleblower Protection Act, N.M. Stat. Ann. §§ 10-16C-1 through 10-16C-5, <u>see</u> Complaint ¶¶ 93-103, at 21-23; (ii) the Fair Pay for Women Act, N.M. Stat. Ann. § 28-23-1 ("FPWA"), <u>see</u> Complaint ¶¶ 104-112, at 22-25; (iii) the Fraud Against Taxpayer Act ("FATA"), N.M. Stat. Ann. §§ 44-9-1 through 44-9-14, <u>see</u> Complaint

¶¶ 113-121, at 25-27; and (iv) the New Mexico Human Rights Act, N.M. Stat. Ann. §§ 28-1-7 ("NMHRA"), see Complaint ¶¶ 122-146, at 27-30. Although the Complaint contains several references to the FMLA, the Court concludes that these references merely indicate that Darr engaged in protected activity necessary to support her state-law retaliation claims. Hence, the Court concludes that the case does not involve a substantial federal question. See Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701 (2006)("[T]he mere presence of a federal issue in a state cause of action and the mere assertion of a federal interest are not enough to confer federal jurisdiction."). Accordingly, the Court will remand the case to the First Judicial District Court, Santa Fe County, State of New Mexico.

## FACTUAL BACKGROUND

The Court takes its facts from the Complaint. The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely Darr's version of events.

According to the Complaint, in November, 2013, NM Game & Fish hired Darr as a Non Game Avian Biologist. See Complaint ¶ 1, at 1. Soon thereafter, Darr discovered that NM Game & Fish was paying her "significantly less than a male employee with less experience and the same education," which, according to Darr, was "in violation of the New Mexico Fair Pay for Women Act." Complaint ¶ 1, at 1. In November, 2014, Darr reported the alleged FPWA violation to NM Game & Fish's human resources department. See Complaint ¶ 1, at 1. Darr informed the human resources department that NM Game & Fish was paying her "87% ($20.63 vs $23.70/hr) of her male comparator." Complaint ¶ 1, at 1. Although NM Game & Fish agreed to correct the pay discrepancy, NM Game & Fish did not admit to violating the FPWA. See Complaint ¶ 1, at 1-2.

Instead, NM Game & Fish generated paperwork which indicated that Darr received a merit-based pay raise.  See Complaint ¶ 1, at 2.  NM Game & Fish did not inform Darr that the FPWA entitled her to additional monetary compensation.  See Complaint ¶ 1, at 2.  As justification for Darr's merit-based pay raise, NM Game & Fish "repeatedly" cited to Darr's "excellent work performance," although this "merit-based pay remedy" further delayed Darr's pay raise from taking effect.  Complaint ¶ 1, at 2.  When Darr inquired about backpay for the FPWA violation, NM Game & Fish informed her that "backpay was not available, even though the statute expressly provides for these damages."  Complaint ¶ 1, at 2.  Darr brought her grievance to the Equal Employment Opportunity Commission ("EEOC"), "but elected not to file a formal complaint because of retaliation fears."  Complaint ¶ 1, at 2.  Nevertheless, thereafter NM Game & Fish "engaged in an endless campaign of retaliation in violation of state law."  Complaint ¶ 1, at 2.  Defendant's retaliation took the form "of denial of funding, restriction of activities/opportunities and increased scrutiny from her supervisors."  Complaint ¶ 1, at 2.  Darr attempted to address her concerns with her supervisors, yet "the harassment and retaliation increased."  Complaint ¶ 1, at 2.  In May, 2017, Darr alerted NM Game & Fish "about her supervisors treating her substantially different than other employees and denying funding/approval needed to complete her assigned job," to include that her supervisors actions were "causing inadequate measures to conserve non-game birds of New Mexico."  Complaint ¶ 1, at 2.  NM Game & Fish did not address Darr's concerns, but instead disciplined her "for 'failing to follow the chain of command' for requesting equal treatment and the ability to do the job she was hired to perform."  Complaint ¶ 1, at 2-3.  NM Game & Fish not only ignored the information that Darr submitted to refute the disciplinary allegations, but also permitted her supervisors to continue their retaliatory behavior, which caused

Darr "to develop a temporary mental health condition, anxiety and clinical depression, as her healthcare provider diagnosed." Complaint ¶ 1, at 3. In August, 2017, Darr "requested a transfer from her supervisors due to her physician's recommendation to improve her work environment," Complaint ¶ 50, at 12, and "was approved for intermittent Family and Medical Leave," Complaint ¶ 51, at 13. NM Game & Fish neither transferred Darr nor investigated her "charges of a retaliatory work environment promptly after . . . approval of Family Medical Leave." Complaint ¶ 52, at 13. Despite its awareness of Darr's mental health condition, NM Game & Fish required Darr "to meet directly with her supervisor in order to pursue grievances and a request for a reasonable accommodation." Complaint ¶ 1, at 3. In September, 2017, Darr informed her supervisor that NM Game & Fish "had not engaged her in an interactive process despite . . . FMLA certification." Complaint ¶ 57, at 14.

Additionally, NM Game & Fish subjected Darr "to a four-hour interrogation by armed and uniformed NMDGF Conservation Officers," and did not provide Darr with the investigation's outcome. Complaint ¶ 1, at 3. In October, 2017, Darr provided her supervisor with the requisite recertification information "to allow her Family and Medical Leave due to her disability related to depression and anxiety." Complaint ¶ 67, at 16. Darr's supervisor, Mason Cline, thereafter

> continued his retaliation by chastising Ms. Darr over a missed deadline that occurred while Ms. Darr was on Family Medical Leave. In violation of law, Mr. Cline instructed Ms. Darr that she could not miss another deadline without prior notice, knowing full well that prior notice was impossible when Ms. Darr had to use intermittent/emergency Family Medical Leave for depression and anxiety flare ups.

Complaint ¶ 70, at 17. In November, 2017, Darr "again filed a grievance about her interim evaluation being retaliatory for her protected activity and exercising her rights under Family Medical Leave and disability laws." Complaint ¶ 71, at 17. Darr "continued to use more Family

and Medical leave."  Complaint ¶ 75, at 18.  NM Game & Fish ignored "[a]ll of Ms. Darr's grievances, complaints and pleas for assistance," and responded to Darr's accommodation request only when she "insisted an interactive meeting be conducted."  Complaint ¶ 1, at 3.  NM Game & Fish insisted on including Darr's supervisors in the reasonable accommodation process that NM Game & Fish implemented "more than four months after . . . observing the ongoing need to use Family Medical Leave time off."  Complaint ¶ 76, at 18.  "The Defendant held only one such interactive meeting," "had no further interactive discussion," and "refused to even provide Ms. Darr with a reasonable accommodation to purchase a tape recorder in lieu of a temporary change of supervision."  Complaint ¶ 1, at 3.  In December, 2017, Darr's supervisor warned Darr that NM Game & Fish intended to involuntarily dismiss her from employment, because NM Game & Fish could not find a position that could accommodate her disability; however, NM Game & Fish "did not conduct a search throughout state government.  Ms. Darr was unable to submit an updated resume . . . because the Family Medical Leave policy . . . did not permit Ms. Darr to use work email, computers or phones."  Complaint ¶ 90, at 21.  NM Game & Fish then "improperly" relied on "a State Personnel Board rule that applied only to individuals with permanent disabilities" to "unilaterally" effect Darr's "constructive discharge," which occurred when Darr resigned in January, 2018.  Complaint ¶ 1, at 3; id. ¶ 92, at 21.

**PROCEDURAL BACKGROUND**

Darr alleges that: (i) NM Game & Fish violated the Whistleblower Protection Act by retaliating against her when she questioned "why her grant proposals were not being acted on timely in violation of NMDGF and U.S. Fish and Wildlife rules, regulations and policies," Complaint ¶ 95, at 22, and "continued to engage in protected activity when she identified her

temporary disability, requested Family and Medical leave and an accommodation," Complaint ¶ 97, at 22; (ii) NM Game & Fish violated the FPWA by retaliating against Darr after she complained to NM Game & Fish about "being paid substantially less than a male employee performing the same job," Complaint ¶¶ 105-08, at 24; (iii) NM Game & Fish violated the FATA by retaliating against Darr when she "questioned her supervisor's delay in approving grant proposals and failing to allocate grant monies available," Complaint ¶ 115, at 25; (iv) NM Game & Fish violated the NMHRA when, after Darr informed NM Game & Fish about her "temporary mental health disability related to clinical depression and anxiety," which she identified "when she applied for and received Family Medical Leave benefits," Complaint ¶ 123, at 27, NM Game & Fish, upon Darr's "return from Family Medical Leave," Complaint ¶ 124, at 27, did not act "on its perception related to Ms. Darr's need for accommodation when it approved the Family Medical Leave application," Complaint ¶ 125, at 27, and instead changed Darr's "essential job functions to require her to meet and communicate more frequently with her Supervisors despite having full knowledge that Ms. Darr's disability would be exacerbated," Complaint ¶ 127, at 27-28, and "refused to provide a temporary transfer to a different supervisor," Complaint ¶ 128, at 28; and (v) NM Game & Fish further violated the NMHRA by "engag[ing] in behavior to allow Ms. Darr's supervisors to require more contact with them, to have armed and uniformed Conservation Officers conduct a four hour interrogation in violation of state law . . . , and not reviewing Ms. Darr's charges about conservation funding for non game bird species," Complaint ¶ 137, at 29.

NM Game & Fish removed the case to federal court pursuant to 28 U.S.C. § 1446(a). See Notice of Removal at 1, filed July 13, 2018 (Doc. 1)("Removal Notice"). In the Removal Notice, NM Game & Fish argues that removal is proper because in the Complaint's paragraphs 51-52, 57,

67, 70-71, 75-76, 90, 97, and 123-125 Darr "refers to the Family Medical Leave Act or . . . authorized Family Medical Leave," which, according to NM Game & Fish, will compel the Court to interpret and apply the FMLA. Removal Notice ¶ 2, at 1. NM Game & Fish contends that such references "imply that Defendant interfered with Plaintiffs FMLA rights," Removal Notice ¶ 4, at 2, and "invite[] the Court to infer that NM Game & Fish violated Plaintiffs Family Medical Leave rights, Removal Notice ¶ 5, at 2. Moreover, Darr's allegations, that she was the victim of unlawful retaliation for having taken Family Medical Leave and that NM Game & Fish interfered with her exercise of her FMLA rights, invoke causes of action "recognized only in federal law, 29 U.S.C. §§ 2601 et. seq. (2009)." Removal Notice ¶ 7, at 3. Accordingly, NM Game & Fish concludes that "this action may be removed to the United States District Court for the District of New Mexico." Removal Notice ¶ 7, at 3.

### 1.    __The Motion.__

Darr moves the Court "to enter an Order remanding the case to the First Judicial District Court, County of Santa Fe," because "[t]here is not a federal question nor a federal claim presented in Plaintiff's Complaint." Motion at 1. Darr argues that removal to federal court was improper, because the Complaint pleads "only causes of action under state law and has raised certain allegations of retaliation in violation of the FMLA as predicate facts to support her state-law retaliation claims." Motion at 1. Darr notes that the Complaint "mentions the words 'family' 'medical' and 'leave' 12 times and 'FMLA' once [sic] time." Motion at 1. Furthermore, Darr argues, removal was "unreasonable," because NM Game & Fish does not inform the Court "why or how the 'family medical leave' and/or FMLA references trigger consideration of a substantial federal question or federal claim, nor does Defendant inform the Court that the FMLA expressly

provides for state court concurrent jurisdiction even if the FMLA references somehow required removal here." Motion at 2.

Darr maintains that her Complaint alleges only violations of state statutes and state claims. See Motion at 4. The Complaint alleges, for example, that Darr "submitted a Charge of Discrimination[1] with the EEOC against Defendant for violation of the New Mexico Fair Pay for Women Act" after discovering that NM Game & Fish was paying her "significantly less than a male employee." Motion at 4 (citing Complaint ¶ 1, at 1). According to Darr, the Complaint further alleges that, when the EEOC, unbeknownst to Darr, filed a complaint against NM Game & Fish, NM Game & Fish "began a campaign of retaliation against Ms. Darr which caused her to 'develop a temporary mental health condition, anxiety and clinical depression.'" Motion at 4 (quoting Complaint ¶ 1, at 3). In addition, the Complaint includes unlawful retaliation claims under the FPWA, the Whistleblower Protection Act, and the FATA, which the Court, according to Darr, "does not have original jurisdiction to adjudicate." Motion at 4.

Darr insists that she "does not allege that the Defendant violated the FMLA," but rather, in the Complaint's paragraphs 51 and 52, that the "Defendant 'approved' intermittent 'Family and Medical Leave,'" Motion at 5 (quoting Complaint ¶ 51, at 13), and, in paragraphs 57, 67, 70, and 71, "mentions the 'FMLA certification' and her 'original Family and Medical Leave application' and retaliatory conduct to include blaming her for a missed deadline that occurred while Ms. Darr was on FMLA leave," Motion at 5 (quoting Complaint ¶ 67, at 16). Darr disputes NM Game &

---

[1]A "Charge of Discrimination" is "a signed statement asserting that an employer, union or labor organization engaged in employment discrimination. It requests EEOC to take remedial action." Filing A Charge of Discrimination, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/employees/charge.cfm (last visited May 21, 2019).

Fish's contention that paragraphs 76 and 90 allege FMLA violations, because paragraph 76 merely states that NM Game & Fish "refused to permit other supervisors to 'be part of the interactive reasonable accommodation process the NMDGF was setting up,'" Motion at 5 (quoting Complaint ¶ 76, at 18), while paragraph 90 "states that she was unable to access 'work email, computers or phones' 'because [of] the Family Medical Leave policy and NMDGF's' restrictions," Motion at 5 (quoting Complaint ¶ 90, at 21). Paragraph 97, according to Darr, establishes that she properly filed a Charge of Discrimination and mentions the FMLA only to assert that she engaged in protected activity related to her temporary disability. See Motion at 5 (citing Complaint ¶ 97, at 22). Paragraphs 123 through 125 do not mention the FMLA but rather discuss that Darr "applied for 'Family Medical Leave benefits'" to emphasize that the "Defendant did not 'act timely to address Ms. Darr's reasonable accommodation request'" in violation of the NMHRA. Motion at 5 (quoting Complaint ¶ 125, at 27). The Complaint, according to Darr, also notes that "the Defendant 'approved the Family Medical Leave application.'" Motion at 5 (quoting Complaint ¶ 125, at 27). Darr insists that these FMLA references merely "provide information to show legally cognizable claims of New Mexico state law" and are therefore insufficient "to provide a basis for this Court to exercise its jurisdiction." Motion at 5-6. According to Darr, "[a] mere reference to federal regulations for the purposes of asserting or proving negligence and/or non-compliance with state law does not transform a controversy into a federal question controversy to permit removal." Motion at 6 (citing McNearney v. U.S. Bankcorp, Inc., No. CIV S-06-0552 GEB\GGH PS, 2006 WL 1582250, at *2 (E.D. Cal. June 5, 2006)(Hollows, M.J.)).

Darr adds that, even if the Complaint asserts FMLA violations, the Court should nonetheless remand the case, because the FMLA provides for concurrent jurisdiction. See Motion

at 6.  Darr explains the complete preemption doctrine, wherein, according to Darr, "federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal," Motion at 7 (quoting Colbert v. Union Pac. R.R. Co., 485 F. Supp. 2d 1236, 1240 (D. Kan. 2007)(Robinson, J.)), and insists that the doctrine is inapplicable here, because "[t]he FMLA is not preemptive," Motion at 7.  That the statute states that "a FMLA violation 'may be maintained against any employer (including a public agency) in any Federal *or State court* of competent jurisdiction by any one or more employees'" is, according to Darr, evidence of concurrent jurisdiction.  Motion at 7 (emphasis in Motion)(quoting 29 U.S.C. § 2617(a)(2)).  Moreover, Darr adds, "the Defendant concedes removal is discretionary in its Notice of Removal" when NM Game & Fish states: "'Accordingly, *this action may be removed* to the United States District Court for the District of New Mexico.'"  Motion at 7 (emphasis in Motion)(quoting Removal Notice at 3).

  **2.**  **The Response.**

  NM Game & Fish responds.  <u>See</u> Defendant's Response to Plaintiff's Opposed Motion for Remand and Memorandum in Support, filed July 30, 2018 (Doc. 11)("Response").  NM Game & Fish maintains that it removed the case to federal court because Darr "pled in her Complaint . . . various allegations that Defendant violated her Family Medical Leave Act . . . rights."  Response at 1.  According to NM Game & Fish, examples implicating the FMLA include paragraph 70, wherein Darr states:

> Mr. Cline continued his retaliation by chastising Ms. Darr over a missed deadline that occurred while Ms. Darr was on Family Medical Leave.  In violation of law, Mr. Cline instructed Ms. Darr that she could not miss another deadline without prior notice, knowing full well that prior notice was impossible when Ms. Darr had to use intermittent/emergency Family Medical Leave for depression and anxiety flare ups.

Response at 1 (quoting Complaint ¶ 70, at 17), and paragraph 71, wherein Darr states that she "'again filed a grievance about her interim evaluation being retaliatory for her protected activity and exercising her rights under Family Medical Leave and disability laws after [NM Game & Fish Human Resources Director Angelica] Ruiz rejected her prior grievance. Performance issues were raised regarding the period while Ms. Darr was on Family Medical Leave,'" Response at 2 (quoting Complaint ¶ 71, at 17). NM Game & Fish adds that Darr also "specifically references the FMLA or her authorized Family Medical Leave" in paragraphs 51-52, 57, 67, 70-71, 75, 76, 90, 97, and 123-25. Response at 2. These references, according to NM Game & Fish, "establish that a trier of fact must determine whether Defendant interfered with Plaintiff's Family Medical Leave by criticizing Plaintiff for missing a deadline and by writing an unsatisfactory evaluation, for which she filed a FMLA-based grievance" and thereby "raise a question of interpretation and application of the FMLA, a federal statute." Response at 2.

According to NM Game & Fish, "the Court must determine whether the Defendant interfered with Darr's FMLA rights and whether the Defendant retaliated against Darr for exercising her FMLA rights," because both claims "are causes of action recognized only in federal law." Response at 4. Moreover, NM Game & Fish asserts, although Darr "intentionally excluded any FMLA interference and/or FMLA retaliation claims in her Complaint in an attempt to make it appear as though there are no federal questions in this case," "the aptly named" artful-pleading doctrine[2] forecloses her ability to avoid federal court. Response at 4. Federal-question jurisdiction

---

[2]Black's Law Dictionary defines "Artful Pleading": "A plaintiff's disguised phrasing of a federal claim as solely a state-law claim in order to prevent a defendant from removing the case from state court to federal court." Pleading, Black's Law Dictionary (10th ed. 2014). See Bar J

is proper, NM Game & Fish argues, because Darr's state-law claims "turn on the interpretation of Plaintiff's allegations of FMLA retaliation since retaliation is a core component of Plaintiff's claims against Defendant." Response at 5.

NM Game & Fish adds that removal is also appropriate, because a jury will need further information regarding how Darr exercised her FMLA rights: "A jury would not be able to determine the facts as alleged without receiving an instruction regarding the meaning of Plaintiff's Family Medical Leave rights, which demonstrates the presence of a significant federal question in this case." Response at 5. According to NM Game & Fish, if Darr testifies, for example, that NM Game & Fish "chastised" her "for missing a deadline while she was out on authorized FMLA leave, . . . the court will have to explain to the jury what Plaintiff's rights were under FMLA," which "involves interpretation and application of a federal statute." Response at 5. Moreover, NM Game & Fish asserts, the Court will need to decide whether Darr's "first submission of FMLA certification paperwork operated as notice to the Defendant that she was suffering retaliation," which NM Game & Fish contends that Darr's Complaint asserts in paragraphs 52, 57, and 67. Response at 5.

---

Sand & Gravel, Inc. v. W. Mobile N.M., Inc., No. CIV 05-800 JB\WPL, 2005 WL 3663689, at *9 (D.N.M. Sept. 29, 2005)(Browning, J.)("The artful pleading rule instructs that 'a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim.'" (quoting Schmeling v. NORDAM, 97 F.3d 1336, 1339 (10th Cir. 1996))).

###	3.	The <u>Reply</u>.

Darr replies to the Response.  <u>See</u> Plaintiff's Reply to Defendant's Response to Opposed Motion for Remand and Memorandum in Support, filed August 7, 2018 (Doc. 14)("Reply").  Darr contends that her receipt of family medical leave benefits "does not create a federal question under the four-prong test announced in *Grable* [<u>& Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>]," 545 U.S. 308, (2005)("<u>Grable</u>").  Reply at 1.  Moreover, Darr asserts that, in <u>Gunn v. Minton</u>, 568 U.S. 251 (2013), the Supreme Court of the United States narrowed the four-prong <u>Grable</u> test when it noted that, absent a federal cause of action, "only a 'slim category of cases'" qualify for removal.  Reply at 1 (quoting <u>Gunn v. Minton</u>, 568 U.S. at 258).  Darr adds that NM Game & Fish "has the burden of proof to show the four-part test from *Grable* established federal question jurisdiction to allow removal," Reply at 2 (citing <u>Dutcher v. Matheson</u>, 733 F.3d 980, 985 (10th Cir. 2013)), and that NM Game & Fish must also show that "the causes of action Plaintiff's states 'arise under' the U.S. Constitution or federal law, . . . [and] also appear on the face of a 'well-pleaded complaint,'" Reply at 2 (citing <u>Franchise Tax Bd. v. Constr. Laborers</u>, 463 U.S. 1, 9-10 (1983)).  Darr insists that NM Game & Fish not only does not carry its burden of proof, but also asserts neither a federal defense to Darr's state-law claims nor a counterclaim involving federal law.  <u>See</u> Reply at 2.  Darr repeats her argument that, because the FMLA allows for concurrent jurisdiction, "there is no preemption of claims."  Reply at 2.  Furthermore, Darr disputes NM Game & Fish's contention that she "'has alleged facts giving rise to claims under the Family and Medical Leave Act,'" because "the face of the Complaint" neither alleges federal law violations nor state law claims that require the Court to resolve federal law issues.  Reply at 2-3.

- 13 -

Darr directs the Court to federal court cases which demonstrate, according to Darr, that remand is appropriate here. Darr argues, for example, that in Laul v. Los Alamos National Security, LLC, No. CIV 16-1386 MV/JHR, 2018 WL 3216054 (D.N.M. May 31, 2018)(Ritter, M.J.), report and recommendation adopted, No. CV 16-1386 MV/JHR, 2018 WL 3209402 (D.N.M. June 29, 2018)(Vázquez, J.),), the Honorable Jerry Ritter, United States Magistrate Judge for the United States District Court for the District of New Mexico, concludes that a lease provision which required interpretation under federal law and the defendant's alleged "national security interests" were unpersuasive removal arguments, because "the United States was not a party to the lease and . . . 'a contractual dispute between two potential subcontractors on a government procurement contract does not implicate a uniquely federal interest unless the United States is exposed to some potential loss.'" Reply at 3-4 (quoting Laul v. Los Alamos Nat'l Sec., LLC, 2018 WL 3216054, at *2). Additionally, in Gallup Med Flight, LLC v. Builders Trust of New Mexico, 240 F. Supp. 3d 1161 (D.N.M. 2017)(Browning, J.), the Court remanded a case to state court, because, according to Darr, "the contract in dispute was not about the interpretation of the federal law governing and regulating air ambulances." Reply at 4 (citing Gallup Med Flight, LLC v. Builders Tr. of N.M., 240 F. Supp. 3d at 1231). Darr contends that the Honorable Judith C. Herrera, United States District Judge for the United States District Court for the District of New Mexico, rejected federal jurisdiction in New Mexico ex rel. Balderas v. Purdue Pharma L.P., 323 F. Supp. 3d 1242 (D.N.M. 2018)(Herrera, J.), when the State of New Mexico Office of the Attorney General "sued opioid manufactures for violations of the New Mexico statutes for public nuisance, Medicare Fraud, Fraud against the Taxpayer Act as well as the state and the federal Controlled Substances Act," despite alleged federal law violations, because federal law was not

essential to each claim. Reply at 4 (citing New Mexico ex rel. Balderas v. Purdue Pharma L.P., 323 F. Supp. 3d at 1252). Judge Herrera added, according to Darr, that federal court jurisdiction does not obtain unless "state law duties . . . 'hinge exclusively on federal law.'" Reply at 4 (quoting New Mexico ex rel. Balderas v. Purdue Pharma L.P., 323 F. Supp. 3d at 1253). Judge Herrera concluded, Darr contends, that to hold otherwise "would result in a 'horde of original filings and removal cases raising other state claims with embedded federal issues.'" Reply at 5 (quoting New Mexico ex rel. Balderas v. Purdue Pharma L.P., 323 F. Supp. 3d at 1253). Based on her analysis of this caselaw, Darr urges the Court to recognize "the limited nature of removal to federal court under the *Grable* holding." Reply at 5.

Darr next repeats her argument that her receipt of FMLA leave is not in dispute here and that the Complaint mentions the FMLA merely to provide "but one example of protected activity that is a statutory predicate for retaliation under state claims asserted." Reply at 5. Darr adds that, should the Court conclude that mere reference to FMLA leave is sufficient to trigger federal jurisdiction, the Court would effect "a 'federalization' of garden variety state law claims when there is not a uniquely federal aspect of the case," and thereby "subject the federal courts to more removal actions." Reply at 5 (quoting Grable, 545 U.S. at 318-19). Darr maintains that "[p]roviding background factual information is not the same as alleging a federal law violation," and therefore, because there is no "serious federal interest that requires the protection of . . . a federal forum," the Court should grant the Motion. Reply at 6.

### 4. **The Hearing.**

The Court began the hearing by stating that "just references to the family . . . medical leave act is not going to probably be enough to constitute a [federal] question." See Draft Transcript of

Hearing at 2:24-3:1 (taken September 25, 2018)("Tr.")(Court).[3]  The Court added, however, that it would

> like to get a feel for . . . the real facts here involving the family leave act.  If it's just references in the complaint and they're saying look[] she took family leave and she got discriminated against or something like that I'm not sure that's going to be . . . a substantial federal question.  But if the c[ourt] or the jury is going to have to decide some . . . true Family Medical Leave Act issues, if there are going to be some federal issues to decide the[n] I think it gets a little more of a federal issue.  But if all she's going to come in and say you know, I took family leave act, and there was some retaliation and I'm just bring[ing] my claims under the state law, then I'm not sure I see a substantial federal question here, and this may need to go[] back to the state.

Tr. at 3:1-17 (Court).  In response, Darr stated that the facts which involve the FMLA are not contested, because NM Game & Fish afforded Darr FMLA benefits.  See Tr. at 3:21-4:2 (Garrity). Darr added that she "could have easily written the complaint . . . using protected time off benefits instead of family medical act."  Tr. at 4:4-6 (Garrity).

The Court then asked Darr what she intends to tell the jury about the FMLA, see Tr. at 4:9-15 (Court), to which Darr responded: "There really isn't a federal portion of this . . . because the Family Medical Leave Act serves as an example [of] protected activity, and it's part of the entire hostile work environment and retaliatory work environment we intend to prove in terms of violations of state law," Tr. at 4:16-21 (Garrity).  The Court inquired whether all Darr intends to say to the jury is that she "took some protected activity[, o]ne of which is . . . some family medical leave time."  Tr. at 4:22-25 (Court).  Darr responded that the FMLA "is really the jump off point for . . . what led to the disability discrimination."  Tr. at 5:3-6 (Garrity).  In response, the Court

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

asked whether Darr is pleading a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101. See Tr. at 5:14-15 (Court). Darr replied in the negative and added that she is alleging that NM Game & Fish "did not do enough in the reasonable accommodation interactive process[;] it only held one me[eting.] . . . [W]e're not alleging that there is any kind of interference or retaliation under the family medical leave a[ct.]" Tr. at 5:16-19 (Garrity). Darr added that "the family medical leave packet identified a temporary disabling condition that we believe the Department of [G]ame and [F]ish then mishandled" pursuant to the NMHRA. Tr. at 5:19-6:3 (Garrity).

The Court then asked Darr whether she could "think of any FMLA claim" that would compel the Court "to have to write any opinion or a portion of an opinion that's going to have to decide any federal issue," Tr. at 6:4-7 (Court), and Darr responded in the negative, see Tr. at 6:8 (Garrity). Darr then elaborated on the facts supporting her claim:

> She presented her medical information [and] the Department of [G]ame and [F]ish decided that she suffered from a seri[ous] medical condition and provided her with intermittent FM[LA] le[ave.] [S]o what happened in November and December of 2017 was th[at] Ms. Darr continued to ask and request for an interactive accommodation process that's protected under our disability law under the New Mexico Human Rights act. So we're not arguing that there was some kind of interference with her claim for family medical le[ave] nor are we arguing that there was any kind of retaliation, because she . . . availed herself of that benefit. We're saying the discrimination piece of our complaint occurred when the . . . discussion was not properly conducted in terms of subsequent meetings. There was just one me[eting], and then . . . a rejection of purchasing a tape recorder, and after that . . . it shifted into the game and fish department not protect[ing] Ms. Darr's work environments and then causing the constructive discharge in January of 2018.

Tr. at 6:10-7:9 (Garrity). Darr insisted that the Supreme Court's decision in Grable illustrates that removal is appropriate only when the case turns on a substantial question of federal law, and that a presumption against removal exists for claims not asserted under a federal statute, the

Constitution of the United States, or a federal treaty. <u>See</u> Tr. at 7:11-24 (Garrity). Here, Darr averred, NM Game & Fish has not asserted the requisite jurisdictional facts to support its removal petition. <u>See</u> Tr. at 7:25-8:4 (Garrity).

The Court next inquired whether Darr is "going to be in any way telling the jury or telling me that there were violations of the FM[L]A," Tr. at 8:10-12 (Court), to which Darr responded in the negative, <u>see</u> Tr. at 8:13 (Garrity). The Court sought additional confirmation from Darr that the FMLA is "just not a part of your case," Tr. at 8:14 (Court), and Darr replied: "Correct," Tr. at 8:15 (Garrity). The Court then asked: if counsel for NM Game & Fish "were to send you over an interrogatory saying . . . are you alleging any violations of the FM[LA], you'd sign that and s[end] it back to him . . . saying no?" Tr. at 8:16-19 (Court). Darr responded: "Correct, we would do that. Because there simply aren't claims un[der] the Family Medical Leave Act." Tr. at 8:20-22 (Garrity). Darr added that, because she is seeking exclusively state law remedies, "all we have to do is Ms. Darr would take the stand and say yes I was receiving Family Medical Leave Act benefit. But we're not going to have any testimony that the benefit was somehow interfered with." Tr. at 9:6-11 (Garrity). Darr summarized her state law retaliation and discrimination claims, <u>see</u> Tr. at 9:17-10:9 (Garrity), and then insisted that she is "not trying to . . . pull a fast one in terms of embedding some kind of federal issue and pretending it doesn't exist," Tr. at 10:10-12 (Garrity).

The Court queried whether the FMLA is, according to Darr, "the only federal act or federal issue that the defendant has identified as being a federal claim or issue that justifies removal." Tr. at 11:6-9 (Court). Darr responded in the affirmative, and then attributed NM Game & Fish's characterization of her claims to a misreading of the Complaint, because the Complaint merely asserts that she took intermittent FMLA leave based on a serious medical condition and that the

NM Game & Fish thereafter discriminated against her in various ways, to include not accommodating her disability. See Tr. at 11:14-12:13 (Garrity).

The Court asked: "Are you going to have any expert, any witness turn to that jury and tell them anything about the FMLA . . . . You know . . [,] . . . explain to them how it works or any sort of issue," Tr. at 13:10-13 (Court), and Darr replied: "I don't think so, Your Honor, because it's really not in dispute. Ms. Darr received the be[nefit]." Tr. at 13:14-15 (Garrity). The Court then inquired whether Darr could "think of any jury instruction, anything I'm going to have [to give] to help the jury . . . so that they []under[stand the] case? Am I going to have to give them any jury instruction about the FMLA." Tr. at 13:25-14:4 (Court). Darr stated:

> I don't think so. Again, Your Honor, simply because we're not disputing that the benefit was received. There might be a jury instruction that relate[s] to protected activity[:] If . . . [the] jury believe[s] that Ms. Darr engaged in protected activity and then listing the receipt of Family Medical Leave Act as one of those protected activities . . . . That could be part of the jury instruction I could anticipate that . . . could be listed as one of the areas of protected activity for Ms. Darr. But . . . you're not actually going to have to resolve any substantive issue with the Family Medical Leave Act.

Tr. at 14:5-20 (Garrity).

NM Game & Fish defended against the Motion by first asserting that Grable and United States Court of Appeals for the Tenth Circuit caselaw, to include the Court's opinion in Edwards-Flynn v. Yara, No. CIV. 08-0186 JB/ACT, 2009 WL 1292485 (D.N.M. March 9, 2009)(Browning, J), suggest that removal is appropriate in this case. See Tr. at 15:3-13 (Williams). NM Game & Fish argued that the Motion's first page says "that Ms. Darr has pled only causes of action under state law and raised certain allegations of retaliation in violation of FMLA," which, according to NM Game & Fish, concedes that Darr is bringing a retaliation claim under the FMLA. Tr. at 15:13-20 (Williams). NM Game & Fish acknowledged that the Complaint's face asserts only

state-law claims but insisted that four of the five state law claims, "are based entirely on claims of interference or ret[aliation] . . . based on the family medical leave a[ct]," which "provides for a claim for retaliation and interference with FMLA rights." Tr. at 16:13-24 (Williams).

The Court then inquired whether having "in your hand a document that says we are not alleging in this case, we will never tell the jury, we'll never tell the Court that the department violated the FMLA, doesn't that just eliminate basically federal issues in this case?" Tr. at 17:2-7 (Court). NM Game & Fish responded that "it will eliminate virtually the entire case." Tr. at 17:8-9 (Williams). The Court expressed that, regardless whether a state court would dismiss the case absent federal issues, an answer to an interrogatory from Darr which says that she is not going to tell the jury that NM Game & Fish violated the FMLA or any federal law would seem to the Court to eliminate "any sort of federal issue . . . whether it's significant or not." Tr. at 17:10-18. The Court added that, because Darr is not bringing an FMLA claim, the Court is, through this suggestion, seeking to protect NM Game & Fish from Darr returning to state court and alleging that, although she has not brought a claim under the FMLA, NM Game & Fish nevertheless violated the FMLA. See Tr. at 18:1-10 (Court).

NM Game & Fish then directed the Court to paragraph 67 of Darr's Complaint, which, according to NM Game & Fish, "says that Ms. Darr provided recertification information to one of the game and fish officials to allow her family and medical le[ave] due to her disability related to depression and anxiety," and thereby concedes that Darr "is disabled per the Family Medical Leave Act." Tr. at 18:16-24 (Williams). The Court informed NM Game & Fish that "the FM[L]A is not going to disable someone." Tr. at 19:1-2 (Court). NM Game & Fish agreed with the Court but added that the FMLA is the basis for Darr's disability claims, and that the Complaint's reference

to the FMLA facts as "predicate facts" is significant, because "a predicate is the basis for an assertion." Tr. at 19:3-11 (Williams). As further support for its position, NM Game & Fish directed the Court to paragraph 70 of Darr's Complaint, which, according to NM Game & Fish, says that, after Darr reported her disability to NM Game & Fish, her supervisor "continued his retaliation by chas[tising] Ms. Darr over a missed d[ead]line that occurred while Ms. Darr was on family medical leave," and to paragraph 71, which states, according to NM Game & Fish, that "performance issues were raised regarding the period while she was on family medical le[ave]." Tr. at 19:25-20:6 (Williams).

The Court then analogized the case to a hypothetical wherein the plaintiff received federal social security benefits and referenced the benefits in the Complaint, for example, to mitigate damages, which struck the Court as predicate facts similar to those that Darr's FMLA references assert; "part of her story is she took FMLA or . . . welfare benefits or food stamps . . . . [I]t's part of story that's federal but it's not really part of issues that we've got to decide in this case." Tr. at 20:13-21:2 (Court). NM Game & Fish disagreed with the Court's hypothetical, because in this case, according to NM Game & Fish, the Court is going to have to decide whether Darr is disabled under the Family Medical Leave Act; "otherwise there is no case." Tr. at 21:3-11 (Williams). Without the "15 paragraphs" that reference the FMLA, NM Game & Fish added, "there is no predicate and no basis for the state court claims." Tr. at 21:16-18 (Williams).

The Court asked NM Game & Fish for the specific instruction that it would have to give to the jury, or the specific issue that it would have to decide on a motion to dismiss or on a motion for summary judgment. See Tr. at 21:25-22:5 (Court). NM Game & Fish responded that the Court will have to decide: (i) whether Darr was disabled under the FMLA; (ii) whether, if Darr was

disabled under the FMLA, NM Game & Fish retaliated against her because of her disability; and (iii) whether NM Game & Fish interfered with Darr's FMLA rights. See Tr. at 22:5-10 (Williams). The Court asked why, on the first issue, it would need to decide whether Darr was disabled under the FMLA when Darr is saying that NM Game & Fish "was very fair [--] they gave me FMLA leave, they did what they were supposed to do." Tr. at 22:13-17 (Court). NM Game & Fish responded:

> Well, . . . the plaintiff's claim is that the New Mexico [G]ame and [F]ish department . . . retaliated against her for exercising rights under the Family Medical Leave Act. And we believe the jury would have to decide does she . . . have rights under the Family Medical Leave Act in the first place and then were any actions of the game and fish department retaliation against her on account of those rights or did they interfere with those [rights] as opposed to any other claim of retaliation.

Tr. at 22:20-23:5 (Williams). NM Game & Fish added that the Tenth Circuit has drafted pattern jury instructions to help a jury decide whether a disabled person suffered retaliation, on which the Court would need to instruct here, because, under Grable and in accord with other federal courts that have considered whether federal question jurisdiction is appropriate, Darr's state law claims implicate significant federal issues. See Tr. at 23:14-24:12 (Williams). NM Game & Fish directed the Court to the Complaint's retaliation and interference claims under the Whistleblower Protection Act as an example of Darr's state law claims' dependency on the FMLA, because the predicate for those claims is that Darr exercised her FMLA rights. See Tr. at 24:15-22 (Williams). Darr's claim under the FPWA, NM Game & Fish asserted, is her only claim that does not implicate a significant federal issue. See Tr. at 25:1-17 (Williams).

The Court presented NM Game & Fish with a second hypothetical:

> [T]he State of New Mexico could set up a statute that said something like this. If you retaliate somebody for exercising their Title VII rights, so they're clearly going into the EEOC and filing a Human Rights act claim under Title VII, . . . if you do

- 22 -

that we as the State of New Mexico are going to deem that protected conduct under the New Mexico Human Rights a[ct] and so that . . . person could just bring a Human Rights act claim [under] state law. [B]ut say that you go and file a . . . Title VII action that's protect[ed] conduct and that wouldn't make the state claim a federal claim.

Tr. at 26:8-22 (Court). NM Game & Fish stated that it would agree with the Court's hypothetical "if that was the only b[are] allegation about the federal claim," but argued that here Darr has alleged FMLA violations in 15 paragraphs and describes these violations as the predicate basis for her claims. Tr. at 26:23-27:4 (Williams). The Court expressed that the quantity of FMLA references is immaterial to whether Darr has alleged a state law violation, see Tr. at 27:10-15 (Court), and NM Game & Fish responded that, unlike the Court's hypothetical, the FMLA references are so woven throughout the entire case that the Court will have to wade deep into federal disability law to provide context for each interference and retaliation claim, see Tr. at 27:16-28:14 (Williams).

The Court asked NM Game & Fish whether it agreed that an admission from Darr which states that she is not raising a retaliation issue under the FMLA would remove the federal issue from the case and leave only the state law retaliation claims. See Tr. at 28:17-24 (Court). NM Game & Fish responded that such an answer essentially would dismiss the entire case. See Tr. at 28:25-29:4 (Williams).

The Court stated that, because Darr has not made an FMLA claim, the Court must decide whether there is an FMLA issue, which it is "grasping to see," and therefore asked NM Game & Fish what it would say regarding the federal issue were it to draft an opinion keeping the case in federal court. See Tr. at 29:16-30 (Court). NM Game & Fish responded that it would say that the Complaint specifically alleges that NM Game & Fish retaliated against Darr because she exercised

her FMLA rights, as, for example, paragraphs 67 through 71, evidence. See Tr. at 30:2-10 (Williams). The Court then asked NM Game & Fish what it would like to see in the Court's Memorandum Opinion and Order if the Court grants the Motion, i.e., what language would prevent Darr from reneging on her concessions. See Tr. at 30:21-24 (Court). NM Game & Fish responded that it would say that Darr

> has made an admission that there is no claim of any sort for retaliation or interference under the FM[LA] . . . and . . . p[ara]graphs 67 through 71 and then also 51, 52, 57, 75, 76, 9[0] . . . 97, 123, 124 and 125 of the complaint should be deleted because in all those paragraphs that's exactly what's . . . claimed but if they're not in there anymore then . . . the state court could . . . deal with what's left.

Tr. at 31:11-24 (Williams). The Court asked Darr how much of NM Game & Fish's proposed language she is willing to adopt. See Tr. at 32:7 (Court). In response, Darr disputed NM Game & Fish's FMLA-issue characterization, because, according to Darr, she used the "predicate facts phrase" merely to tell her story, which includes her taking family medical leave. Tr. at 32:8-12 (Garrity). Darr then explained that "family medical leave" describes only a serious medical condition, and not necessarily a disability, and might not be a disabling condition under the NMHRA. Tr. at 32:12-17 (Garrity). Hence, Darr's position is that she "suffered a temporary disability while she was receiving intermittent family medical leave and the discrimination occurred because of the failure to accommodate and the pretext for declaring an undue hardship by the New Mexico game and dish department." Tr. at 32:17-24 (Garrity). Darr added that the FMLA provides for concurrent state court jurisdiction, but then confirmed, when the Court inquired, that she is not asserting a claim under the FMLA. See Tr. at 32:23-33:6 (Garrity, Court).

The Court asked Darr to respond to NM Game & Fish's assertion that the case requires the factfinder to decide whether Darr was disabled under the FMLA. See Tr. at 33:8-12 (Court). In

response, Darr stated that NM Game & Fish already determined that Darr suffered from a serious medical condition when it afforded her intermittent FMLA benefits, and that she is

> suing on at least . . . 8 enumerated paragraphs under the whistleblower protection act . . . that dealt with other acts of discriminatory behavior because Ms. Darr engaged in protected activity related to grant funding with bird conservation programs and other matters . . . and that she suffered adverse employment actions creating a hostile work environment in violation of the [Whistle]blower protection act[,] the fraud against the taxpayer act[,] and the New Mexico Human Rights act on the basis of disability and retaliation.

Tr. at 33:13-34:5 (Garrity).

The Court asked Darr whether she is going to tell the factfinder that, because NM Game & Fish afforded her FMLA benefits, it therefore determined that she was disabled. <u>See</u> Tr. at 34:16-19 (Court). Darr responded in the negative, because the law requires her to prove that her temporary mental health condition was disabling, and added that the "temporary" qualifier is important, because state disability law recognizes temporary disabling conditions, and because Darr's position is that NM Game & Fish mischaracterized her disability as permanent so that it could apply a State Personnel Board rule to effect her involuntary separation. Tr. at 34:20-35:10 (Garrity). Darr then disputed NM Game & Fish's contention that the case would dissolve absent her FMLA claims, because she has pled multiple causes of action under state law, which include her claims related to hostile work environment, to failure to properly accommodate, and to retaliation through the State Personnel Board rule's misapplication. <u>See</u> Tr. at 35:17-36:4 (Garrity). Darr confirmed that, if "an admission were provided to the plaintiff, the plaintiff would admit that [she is] not claiming interreference or retaliation under the Family Medical Leave Act." Tr. at 36:5-8 (Garrity).

The Court stated that it is "inclined to think there isn't a significant federal issue he[r]e," but first would need to grapple with the <u>Grable</u> issues. Tr. at 37:25-38:3 (Court). The Court advised that "some paper discovery" would assist with drafting its Memorandum Opinion and Order, but nonetheless concluded that it is "inclined to grant the motion to remand." Tr. at 38:9-13 (Court).

## RELEVANT LAW REGARDING SUBJECT-MATTER JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by Constitution and statute." <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal-question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction. <u>See</u> 28 U.S.C. §§ 1331, 1332.

Pursuant to rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lack subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Objection to a federal court's subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 506 (2006). <u>See</u> <u>Kontrick v. Ryan</u>, 540 U.S. 443, 455 (2004)("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); <u>Mansfield, Coldwater & Lake Mich. Ry. v. Swan</u>, 111 U.S. 379, 382 (1884)(holding that the nature and limits

of federal judicial power require the court to raise the issue of subject-matter jurisdiction sua sponte).

Whenever the court lacks jurisdiction of the subject matter involved in an action, the court must dismiss the action.  See Tuck v. U.S. Auto. Ass'n, 859 F.2d 842, 844 (10th Cir. 1988).  The party seeking the exercise of jurisdiction bears the burden of establishing jurisdiction and "must allege in his pleading the facts essential to show jurisdiction."  United States ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d 1491, 1495 (10th Cir. 1995)(citation and internal quotations omitted).  In determining whether a party has adequately presented facts sufficient to establish jurisdiction, the court should look to the complaint's face, see Whitelock v. Leatherman, 460 F.2d 507, 514 (10th Cir. 1972), accepting the well-pleaded factual allegations as true, see United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1203 (10th Cir. 2001), but ignoring conclusory allegations of jurisdiction, see Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971). "[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims."  Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218 (10th Cir. 2006)(emphasis in original).

### LAW REGARDING FEDERAL-QUESTION JURISDICTION

Federal courts have limited jurisdiction, and there is a presumption against the existence of federal jurisdiction.  See Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  There is a federal question if the case arises under the Constitution, laws, or treaties of the United States.  See 28 U.S.C. § 1331.

Whether a case arises under the federal law is determined by the "well-pleaded complaint rule," Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 9 (1983)("Franchise Tax Bd."), specifically, whether "a federal question is presented on the face of the plaintiff's properly pleaded complaint," Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)(citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936)). This determination is made by examining the plaintiff's complaint, "unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." Franchise Tax Bd., 463 U.S. at 10 (citing Taylor v. Anderson, 234 U.S. 74, 75-76 (1914)). The Supreme Court has further limited subject-matter jurisdiction by requiring that the federal law on which the plaintiff's complaint relied create a private cause of action. See Franchise Tax Bd., 463 U.S. at 25-26. The Supreme Court has emphasized that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 813 (1986). See Sandoval v. N.M. Tech. Grp., L.L.C., 174 F. Supp. 2d 1224, 1232 n.5 (D.N.M. 2001)(Smith, M.J.)("Merrell Dow is the controlling law when invoking subject matter jurisdiction" and when a right under state law turns on construing federal law). District courts must exercise "prudence and restraint" when determining whether a state cause of action presents a federal question, because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. at 810.

In addition to the requirement that the federal question appear on the complaint's face, the "plaintiff's cause of action must either be (1) created by federal law, or (2) if it is a state-created cause of action, 'its resolution must necessarily turn on a substantial question of federal law.'"

Nicodemus v. Union Pac. Corp., 318 F.3d 1231, 1235 (10th Cir. 2003)(quoting Rice v. Office of Servicemembers' Grp. Life Ins., 260 F.3d 1240, 1245 (10th Cir. 2001)). If the resolution turns on a substantial question of federal law, the federal question must also be "contested." Grable, 545 U.S. at 313. Finally, the exercise of federal-question jurisdiction must also be "consistent with congressional judgment about the sound division of labor between state and federal courts governing § 1331's application." Grable, 545 U.S. at 313. Particularly, the court must determine whether recognition of federal-question jurisdiction will federalize a "garden variety" state-law claim that will result in the judiciary being bombarded with cases traditionally heard in state courts. Grable, 545 U.S. at 318. See Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *7-9 (D.N.M. April 30, 2009)(Browning, J.).

## LAW REGARDING REMOVAL

"If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C.§ 1441(a) to remove the action to the federal district court 'embracing the place where such action is pending.'" Thompson v. Intel Corp., 2012 WL 3860748, at *4 (quoting 28 U.S.C. § 1441(a); and citing Huffman v. Saul Holdings L.P., 194 F.3d 1072, 1076 (10th Cir. 1999)). Defendants may remove a civil action to federal court where the district court would have original jurisdiction over the case based upon diversity of citizenship. See Huffman v. Saul Holdings L.P., 194 F.3d at 1076 (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). Nonetheless, federal courts "are to . . . narrowly [construe removal statutes] in light of [their] constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 404 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)). "All doubts are to be resolved against removal." Fajen v. Found. Reserve Ins., 683 F.2d 331, 333

(10th Cir. 1982)(citing <u>Greenshields v. Warren Petroleum Corp.</u>, 248 F.2d 61, 65 (10th Cir. 1957)). The defendant seeking to remove an action to federal court bears the burden of establishing the district court's subject-matter jurisdiction over the case. See <u>Montoya v. Chao</u>, 296 F.3d 952, 955 (10th Cir. 2002).

### 1.    <u>The Presumption Against Removal.</u>

Federal courts are courts of limited jurisdiction; thus, the defendant seeking removal must overcome some measure of a presumption against removal jurisdiction. See <u>Fajen v. Found. Reserve Ins.</u>, 683 F.2d at 333; <u>Bonadeo v. Lujan</u>, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *4 (D.N.M. April 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand."). The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence." <u>McPhail v. Deere & Co.</u>, 529 F.3d at 953. See also <u>Bonadeo v. Lujan</u>, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").

### 2.    <u>Procedural Requirements for Removal.</u>

Title 28 of the United States Code's § 1446 governs the procedure for removal. See 28 U.S.C. § 1446. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed." <u>Thompson v. Intel Corp.</u>, 2012 WL 3860748, at *5. A removal that does not comply with the express statutory requirements is defective, and the case must be remanded to state court. See <u>Huffman v. Saul Holdings L.P.</u>, 194 F.3d at 1077. See also <u>Chavez v. Kincaid</u>, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Title 28 of the United States Code's § 1446(a) provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C.§ 1446(a). Such notice of removal is proper if filed within thirty days from the date when the case qualifies for federal jurisdiction. See 28 U.S.C.§ 1446(b); Caterpillar Inc. v. Lewis, 519 U.S. at 68-69. The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available. Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998). The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not

draw . . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a motion to dismiss."  (second alteration in <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>)(quoting <u>Makor Issues & Rights, Ltd. v. Tellabs, Inc</u>, 437 F.3d 588, 602 (7th Cir. 2006))); <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555 (citations and footnote omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient "facts that, if assumed to be true, state a claim to relief that is plausible on its face."  <u>Mink v. Knox</u>, 613 F.3d 995, 1000 (10th Cir. 2010)(citing <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678).  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of

facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Okla., 519 F.3d 1242, 1247 (10th Cir. 2008)(McConnell, J.)(citation omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions. First, a defendant can argue an affirmative defense on a motion to dismiss where the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss. See Robbins v. Okla., 519 F.3d at 1247; Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009)). Second, the defendant can raise the defense on a motion to dismiss where the facts establishing the affirmative defense are apparent on the complaint's face. See Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), . . . a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule."). The defense of limitations is the affirmative defense that the complaint's uncontroverted facts is most likely to establish. See 5 Charles Alan Wright et al., Federal Practice and Procedure: Civil § 1277, at 643 (3d ed. 2004). If the complaint

sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union Pac. R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).

The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute.  The Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, the plaintiff must plead facts establishing an exception to the affirmative defense).  From caselaw in several Courts of Appeals, the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by refraining from pleading specific or identifiable dates.  See Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006).  Although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this practice.  See Anderson Living Tr. v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188 (D.N.M. 2014)(Browning, J.).

## LAW REGARDING REMAND

If a defendant has removed a matter to federal court, the plaintiff may object to the removal by filing a motion to remand the case to state court.  See Caterpillar Inc. v. Lewis, 519 U.S. at 69. A defect in the removal procedure is one of the grounds for remand that 28 U.S.C. § 1447(c) specifies.  See Moreno v. Taos Cty. Bd. of Comm'rs, 778 F. Supp. 2d 1139, 1141 (D.N.M. 2001)(Johnson, J.);  McShares, Inc. v. Barry, 979 F. Supp. 1338, 1341 (D. Kan.

1997)(Crow, J.)(citation omitted). Specifically, § 1447(c) provides that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). Lack of subject-matter jurisdiction is a second ground for remand specified in § 1447(c). Section 1447(c) provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## LAW REGARDING THE FMLA

The FMLA entitles qualifying employees to a total of twelve administrative weeks of leave during any twelve-month period under certain specified circumstances, including instances where a serious health condition makes an employee unable to perform the functions of the employee's position, where the employee has given birth or has adopted a son or daughter, or where the employee's spouse, son, daughter, or parent has a serious health condition and needs the employee to care for him or her. See 29 U.S.C. § 2612(a)(1); Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1180 (10th Cir. 2006)("The FMLA guarantees the substantive rights of up to twelve weeks of unpaid leave for eligible employees of covered employers for serious health conditions and reinstatement to the former position or an equivalent one upon return from that leave.").

The FMLA states that it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," and that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. §§ 2615(a)(1), (2). The Tenth Circuit has "recognized two theories of recovery under

§ 2615(a): an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2)." <u>Metzler v. Fed. Home Loan Bank of Topeka</u>, 464 F.3d at 1170 (citation omitted). "The distinction between these two theories is important because the elements and burdens of proof that apply to § 2615(a)(1) claims differ from those that apply to § 2615(a)(2) claims." <u>Metzler v. Fed. Home Loan Bank of Topeka</u>, 464 F.3d at 1170 (citation omitted).

Courts analyze FMLA retaliation claims under the analytical framework that <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), establishes. <u>See</u> <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d 205, 208 (10th Cir.1997)(citation omitted). "Under that standard, the plaintiff initially must establish a prima facie case." <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d at 208 (citation omitted). To establish a prima-facie case for FMLA retaliation, "a plaintiff must show that:" (i) he or she "engaged in activity protected under the act"; (ii) "subsequently suffered adverse action by the employer"; and (iii) "a causal connection existed between the employee's activity and the adverse action." <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d at 208-09. "The burden then shifts to the employer to offer a legitimate non-retaliatory reason for the plaintiff's termination." <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d at 208 (citation omitted). "If the employer offers such a reason, the burden then shifts back to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual." <u>See</u> <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d at 208 (citations and internal quotation marks omitted). "A plaintiff can demonstrate pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's . . . reasons for its action, which a reasonable factfinder could rationally find . . . unworthy of credence." <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d at 209 (citation and internal

quotation marks omitted). "Mere conjecture that the employer's reason is pretext, however, will not defeat a motion for summary judgment." Richmond v. ONEOK, Inc., 120 F.3d at 209 (citation omitted).

To prevail on an interference theory, a plaintiff must demonstrate that: (i) he or she was entitled to FMLA leave; (ii) "some adverse action by the employer interfered with his right to take FMLA leave"; and (iii) "the employer's action was related to the exercise or attempted exercise of his [or her] FMLA rights." Jones v. Denver Pub. Sch., 427 F.3d 1315, 1319 (10th Cir. 2005)(citation omitted). "Under this theory, a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent, and the *McDonnell Douglas* burden-shifting analysis does not apply to interference claims." Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d at 1180 (internal citations omitted).

## LAW REGARDING THE NEW MEXICO WHISTLEBLOWER PROTECTION ACT

The New Mexico Whistleblower Protection Act, N.M. Stat. Ann. § 10-16-3 provides:

A public employer shall not take any retaliatory action against a public employee because the public employee:

A. communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act;

B. provides information to, or testifies before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act; or

C. objects to or refuses to participate in an activity, policy or practice that constitutes an unlawful or improper act.

N.M. Stat. Ann. § 10-16-3. A "retaliatory action" for purposes of the Whistleblower Protection Act means "taking any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment." N.M. Stat. Ann. § 10-16-2D. An "unlawful or

improper act" means a practice, procedure, action or failure to act on the part of a public employer that: (i) violates a federal or state law, regulation, or administrative rule; (ii) constitutes malfeasance in public office; or (iii) constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public.  N.M. Stat. Ann. § 10-16-2E.  An action for violation of the Whistleblower Protection Act must be filed within two years from the date on which the retaliatory action occurred.  See N.M. Stat. Ann. § 10-16-6.

## LAW REGARDING THE FATA

In 2007, the New Mexico Legislature passed the FATA, a false claims act with a qui tam[4] provision.  See N.M. Stat. Ann. §§ 44-9-1 to -14.  The FATA contains a first-to-file provision, stating: "When a person brings an action pursuant to this section, no person other than the attorney general on behalf of the state may intervene or bring a related action based on the facts underlying the pending action."  N.M. Stat. Ann. § 44-9-5E.  The FATA also contains the following non-exclusivity clause: "The remedies provided for in the Fraud Against Taxpayers Act are not exclusive and shall be in addition to any other remedies provided for in any other law or available under common law."  N.M. Stat. Ann. § 44-9-14.

The federal analog to the FATA is the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA"), which has as its purpose "encourag[ing] 'whistleblowers to act as private attorneys-general' in

---

[4]At common law,

*qui tam* is a writ whereby a private individual who assists a prosecution can receive all or part of any penalty imposed.  Its name is an abbreviation of the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, meaning "[he] who sues in this matter for the king as well as for himself."

*Qui tam*, Wikipedia, https://en.wikipedia.org/wiki/Qui_tam (last visited Aug. 27, 2019)(emphasis in original).

bringing suits for the common good." Walburn v. Lockheed Martin Corp., 431 F.3d 966, 970 (6th Cir. 2005)(quoting United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co., 41 F.3d 1032, 1041-42 (6th Cir. 1994)).  It acts as a "jurisdictional limit on the court's power to hear certain duplicative qui tam suits." United States ex rel. Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276 (10th Cir. 2004).  The FCA also recognizes the need "to discourage opportunistic plaintiffs from bringing parasitic lawsuits whereby would-be relators merely feed off a previous disclosure of fraud." Walburn v. Lockheed Martin Corp., 431 F.3d at 970.  See United States ex rel. Grynberg, 390 F.3d at 1278 ("The False Claims Act's qui tam provisions are designed to encourage private citizens to expose fraud but to avoid actions by opportunists seeking to capitalize on public information.").  The FATA allows for recovery of three times the actual losses that the State suffered. See N.M. Stat. Ann. § 44-9-3C.

## LAW REGARDING THE NMHRA

The NMHRA, which the New Mexico Human Rights Division and the New Mexico Human Rights Commission administers, makes it an unlawful discriminatory practice for

> an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition, or, if the employer has fifty or more employees, spousal affiliation; provided, however, that 29 U.S.C. Section 631(c)(1) and (2) shall apply to discrimination based on age; or, if the employer has fifteen or more employees, to discriminate against an employee based upon the employee's sexual orientation or gender identity[.]

N.M. Stat. Ann. § 28-1-7A.  The NMHRA allows individuals to bring a lawsuit in the appropriate district court after exhausting their administrative remedies.  See Luboyeski v. Hill, 117-NMSC-380, 872 P.2d 353, 355 (1994).  The NMHRA sets out the same standard for establishing wrongful

discrimination as Title VII.  See Lobato v. N.M. Env't Dep't, 733 F.3d 1283, 1296-97 (10th Cir. 2013)(holding that, "because we conclude that Lobato has no Title VII claim, we also conclude he has no NMHRA claim"); Orr v. City of Albuquerque, 417 F.3d 1144, 1149 n.5 (10th Cir. 2005)("Plaintiffs' burden under the NMHRA is identical to their burden under Title VII.").  The NMHRA requires an individual to first exhaust his or her administrative remedies before bringing a lawsuit.  See Bates v. N.M. Corr. Dep't, No. CIV 08-1013, 2010 WL 4339367, at *7 (D.N.M. Sept. 30, 2010)(Browning, J.)("NMHRA claims must be administratively exhausted before being brought in federal court."); Luboyeski v. Hill, 117-NMSC-380, 872 P.2d at 355.  The NMHRA provides:

> A person aggrieved by an order of the commission may obtain a trial de novo in the district court of the county where the discriminatory practice occurred or where the respondent does business by filing a notice of appeal within ninety days from the date of service of the [New Mexico Human Rights] commission's order.

N.M. Stat. Ann. § 28-1-13A.

The Supreme Court of New Mexico applies the framework that the Supreme Court of the United States established in McDonnell Douglas Corp. v. Green, "[w]hen considering a violation of the NMHRA."  Juneau v. Intel Corp., 2006-NMSC-002, ¶ 9, 127 P.3d 548, 551.  The Supreme Court of New Mexico has stated that, "when considering claims under the NMHRA, we may look at federal civil rights adjudication for guidance in interpreting the NMHRA.  Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own."  Ocana v. Am. Furniture Co., 2004-NMSC-018, ¶ 23, 91 P.3d 58, 68 (internal quotation marks omitted)(citations omitted).  "[C]laims of age, race, national origin, gender discrimination, and retaliation are all subject to the burden shifting framework that the Supreme Court established in McDonnell Douglas Corp. v. Green."  Gamez v.

Country Cottage Care & Rehab., 377 F. Supp. 2d 1103, 1119 (D.N.M. 2005)(citing McDonnell Douglas Corp. v. Green, 411 U.S. at 802-04). Under the McDonnell Douglas Corp. v. Green framework, a plaintiff must set forth a prima facie case of discrimination. See Kelley v. City of Albuquerque, 375 F. Supp. 2d 1183, 1210 (D.N.M. 2004)(Browning, J.). If the plaintiff establishes a prima facie case for any of his discrimination claims, "the burden shifts to the defendant to come forward with a legitimate nondiscriminatory reason for its employment related decision." McDonnell Douglas Corp. v. Green, 411 U.S. at 802. "Upon the employer's articulation of a legitimate, nondiscriminatory reason . . . the presumption of discrimination established by the prima facie case simply drops out of the picture." Kelley v. City of Albuquerque, 375 F. Supp. 2d at 1210 (internal quotations omitted). The plaintiff then must present evidence that the defendant's proffered reason for the employment decision was pretextual. See Kelley v. City of Albuquerque, 375 F. Supp. 2d at 1210 (citing Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000)). The Supreme Court of New Mexico has stated that the framework it applies to discrimination claims under the NMHRA is as follows: "[A]n employee bears the initial burden of demonstrating a prima facie case of discrimination, which then shifts the burden to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. The employee then has the opportunity to rebut the employer's proffered reason as pretextual or otherwise inadequate." Juneau v. Intel Corp., 2006-NMSC-002, ¶ 9, 127 P.3d at 551 (citing McDonnell Douglas Corp. v. Green, 411 U.S. at 802-05). This approach is the same as the McDonnell Douglas Corp. v. Green framework.

While New Mexico uses federal law to interpret the NMHRA, there are two ways in which the NMHRA is broader than federal law. First, as this Court has previously acknowledged, the

Supreme Court of New Mexico allows for personal liability under the NMHRA. See Duprey v. Twelfth Judicial Dist. Court, No. 08-0756 JB, 2009 WL 2482170, at *7 (D.N.M. July 28, 2009)(Browning, J.). The NMHRA defines "employer" as "any person employing four or more persons and any person acting for an employer." N.M. Stat. Ann. § 28-1-2B. While acknowledging that there is generally no personal liability under Title VII, the Supreme Court of New Mexico has "reject[ed] the proposition that there can exist no individual liability under the NMHRA." Sonntag v. Shaw, 2001-NMSC-015, ¶ 13, 22 P.3d 1188, 1193. In Sonntag v. Shaw, a defendant relied on Title VII caselaw to argue that employees cannot sue a corporation's owner in the owner's individual capacity under the NMHRA. See 2001-NMSC-015, ¶ 13, 22 P.3d at 1193. Although it held that the defendant could not be held personally liable, given that the plaintiff had failed to exhaust administrative remedies, the Supreme Court of New Mexico declined to close the door on individual liability under the NMHRA. See 2001-NMSC-015, ¶ 13, 22 P.3d at 1193. The Supreme Court of New Mexico noted:

> [T]his Court has acknowledged the possibility of individual liability for discrimination claims. Cf. Luboyeski v. Hill, 117 N.M. 380, 382, 872 P.2d 353, 355 (1994)(affirming the dismissal of individual defendants because the plaintiff failed to exhaust administrative remedies against them); Mitchell-Carr v. McLendon, 1999-NMSC-025, ¶ 10, 127 N.M. 282, 980 P.2d 65 (citing Luboyeski). As Plaintiff suggests, the potential for individual liability for discrimination claims is rooted in the language of the NMHRA itself, which forbids "any person" from supporting a discriminatory practice. Section 28-1-7(i); see N.M.S.A. 1978, § 28-1-2(A) (1993)(including within its definition of "person" for purposes of the NMHRA, "one or more individuals").

2001-NMSC-015, ¶ 12, 22 P.3d at 1193. Second, the NMHRA's definition of "serious medical condition," N.M. Stat. Ann. § 28-1-7, is broader in scope than the ADA's definition of disability. See Clayton v. Pioneer Bank, No. 07-0680, 2008 WL 5787472, at *17-18 (D.N.M. Dec. 31, 2008)(Browning, J.)(recognizing that, although "the terms 'medical condition' under the

NMHRA, and 'disability,' under the ADA, may be interchangeable in some cases[,]" they may not be the same in others).

<h2 style="text-align:center"><u>LAW REGARDING NEW MEXICO FPWA</u></h2>

Although labeled the "Fair Pay for Women Act," N.M. Stat. Ann. §§ 28-23-1 through 28-23-6, the FPWA is gender neutral, prohibiting discrimination on the basis of sex "by paying wages to employees . . . at a rate less than the rate that the employer pays wages to employees of the opposite sex in the establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility and that are performed under similar working conditions."  N.M. Stat. Ann. § 28-23-3(A).  The FPWA makes exceptions for payments made under a seniority system, a merit system, or a "system that measures earnings by quality or quantity of production."  N.M. Stat. Ann. § 28-23-3(A).  Moreover, the FPWA prohibits retaliation in the form of discriminating against an employee for (i) asserting a claim under the FPWA, (ii) assisting another person in doing so, or (iii) "informing another person about employment rights or other rights provided by law."  N.M. Stat. Ann. § 28-23-5.

The FPWA and the federal Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), are coterminous, <u>compare</u> N.M. Stat. Ann. § 28-23-3(A) (prohibiting discrimination "between employees on the basis of sex by paying wages to employees in the establishment at a rate less than the rate that the employer pays wages to employees of the opposite sex in the establishment for equal work on jobs") <u>with</u> 29 U.S.C. § 206(d)(1) (prohibiting discrimination "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs"), and courts therefore analyze New Mexico wage discrimination claims using applicable EPA legal

principles, see Burke v. New Mexico, 696 F. App'x 325, 333 (10th Cir. 2017). The district court analyzed Ms. Burke's claims asserting a violation of New Mexico's Fair Pay for Women Act (FPWA) under the rubric of the federal Equal Pay Act (EPA), given the statutes' similarity.").

EPA claims proceed in two steps. "First, the plaintiff must establish a prima facie case of discrimination by demonstrating that employees of the opposite sex were paid differently for performing substantially equal work." Mickelson v. N.Y. Life Ins. Co., 460 F.3d 1304, 1311 (10th Cir. 2006). The Tenth Circuit has stated:

> Substantial equality is to be evaluated in terms of skill, effort and responsibility, and requires a practical judgment on the basis of all the facts and circumstances of a particular case. Skill includes such considerations as experience, training, education, and ability. Effort refers to the physical or mental exertion necessary to the performance of a job. Responsibility concerns the degree of accountability required in performing a job. Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job.

E.E.O.C. v. Cent. Kan. Med. Ctr., 705 F.2d 1270, 1272 (10th Cir. 1983), rejected on other grounds by McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988). The Tenth Circuit does not construe the EPA's equal work requirement broadly and has stated that "failure to furnish equal pay for 'comparable work' or 'like jobs' is not actionable." Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1364 (10th Cir. 1997).

If the plaintiff establishes a prima-facie case, the burden of persuasion then shifts to the defendant to prove that the wage disparity was justified for one of four permissible reasons. See Mickelson v. N.Y. Life Ins. Co., 460 F.3d at 1311. The four reasons are: (i) a seniority system; (ii) a merit system; (iii) a pay system based on quantity or quality of output; (iv) a disparity based on any factor other than sex. See 29 U.S.C. § 206(d); Mickelson v. N.Y. Life Ins. Co., 460 F.3d at 1311. This stage means that, to prevail on summary judgment, the employer must prove at least

one affirmative defense so clearly that no rational jury could find to the contrary. See <u>Mickelson v. N.Y. Life Ins. Co.</u>, 460 F.3d at 1311.

The FPWA provides that an employee may file suit within two years of his or her last employment date if the employee no longer works for the employer. See <u>N.M. Stat. Ann. § 28-23-4(D)</u>. Additionally, the employee may recover back wages for a period of up to six years before the date of the last FPWA violation. See <u>N.M. Stat. Ann. § 28-23-6(D)</u>. Furthermore, the FPWA provides a two-track enforcement system under which an individual alleging FPWA violations may either (i) maintain a claim to establish liability and recover damages and court-ordered relief directly in court on behalf of him or herself, or "on behalf of other employees similarly situated"; or (ii) seek relief under the NMHRA. See <u>N.M. Stat. Ann. § 28-23-4(A)</u>. Currently, the NMHRA guarantees gender-neutral pay equity, however, the NMHRA does not settle whether a gender discrimination victim is entitled to recover back pay for a period exceeding the NMHRA's 300-day statute of limitations. See <u>N.M. Stat. Ann. § 28-1-7(A)</u>. Moreover, the FPWA, unlike the NMHRA, does not include the state in its definition of "employer" or "person." The Court of Appeals of New Mexico, however, has answered in the affirmative the question whether an individual wishing to pursue a gender pay discrimination claim under the FPWA against the state or one of its political subdivisions may do so if her or she chooses to go directly to court to assert the claim rather than follow the NMHRA's administrative procedures. See <u>Wolinsky v. N.M. Corr. Dep't</u>, 2018-NMCA-071, ¶ 15, 429 P.3d 991, 995 ("We conclude that the Legislature intended for the state to be subject to claims brought under the FPWA.").

The FPWA provides that a court may order appropriate relief for FPWA violations, including requiring an employer to post in its place of business a notice describing the violations

that the court found it committed.  See N.M. Stat. Ann. § 28-1-4(C).  In addition to back pay and damages for retaliation, the FPWA provides for "all other actual damages" as well as treble damages.  See N.M. Stat. Ann. § 28-23-6(A).  A court may decide not to impose, however, treble damages against an employer if the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that the employer had reasonable grounds for believing" that its actions did not violate the FPWA.  N.M. Stat. Ann. § 28-23-6(B).  A question remains whether these remedies are available if an employee chooses to proceed under the NMHRA, which does not specifically provide for this court-ordered relief or for treble damages.  Moreover, the FPWA permits punitive damages, see N.M. Stat. Ann. § 28-23-6(C),and, given the FPWA's dual-track system, a further question remains regarding punitive damage's availability if the NMHRA track is chosen, because the NMHRA prohibits an award of punitive damages, see Gandy v. Wal-Mart Stores, Inc., 1994-NMSC-040, ¶ 8, 872 P.2d 859, 861 ("Punitive damages are sometimes recoverable in tort actions but are not recoverable under the Human Rights Act.").

## LAW REGARDING FEDERAL PREEMPTION

Article VI, clause 2, of the Constitution provides that the United States of America's laws "shall be the Supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  Consistent with the Supremacy Clause, the Supreme Court has "long recognized that state laws that conflict with federal law are 'without effect.'"  Altria Group, Inc. v. Good, 555 U.S. 70, 75 (2008)("Altria II")(quoting Maryland v. Louisiana, 451 U.S. 725, 746 (1981)).  The Supreme Court has summarized the following situations in which preemption is likely to be found:

> Pre-emption may be either expressed or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly

contained in its structure and purpose. Absent explicit pre-emptive language, we have recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, and conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Gade v. Nat'l Solid Wastes Mgmt. Assoc., 505 U.S. 88, 98 (1992).

As noted, preemption may be express or implied. See Gade v. Nat'l Solid Wastes Mgmt. Assoc., 505 U.S. at 98. When faced with express preemption -- where a statute expressly states that it preempts certain areas of state law -- a court must determine the scope of the preemption that Congress intended. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)(stating that "the purpose of Congress is the ultimate touch-stone in every pre-emption case"). "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." Altria II, 555 U.S. at 77. When the preemption clause's text is susceptible to more than one plausible reading, courts ordinarily "accept the reading that disfavors pre-emption." Bates v. Dow Agrosciences, LLC, 544 U.S. 431, 449 (2005). Preemption arguments are analyzed under rule 12(b)(6), 12(c), or 56. See Harris v. Kellog Brown & Root Servs., Inc., 724 F.3d 458, 464 n.1 (3d Cir. 2013); Fisher v. Halliburton, 667 F.3d 602, 609 (5th Cir. 2012);.[5]

---

[5]There is a conflict among the United States Courts of Appeals regarding which rule governs a district court's review of preemption arguments. The United States Court of Appeals for the Fifth Circuit has noted that preemption is not a jurisdictional question, so rule 12(b)(1) is inappropriate. See Fisher v. Halliburton, 667 F.3d 602, 609 (5th Cir. 2012). Instead, it has held that

> Federal preemption is an affirmative defense that a defendant must plead and prove. Unless the complaint itself establishes the applicability of a federal-preemption defense -- in which case the issue may properly be the subject of a Rule

Determining express preemption's scope entails scrutinizing the statutory text in light of two presumptions. First,

> [i]n all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

---

12(b)(6) motion -- a defendant should ordinarily raise preemption in a Rule 12(c) motion for judgment on the pleadings or a Rule 56 motion for summary judgment.

Fisher v. Haliburton, 667 F.3d at 609. See Harris v. Kellog Brown & Root Servs., Inc., 724 F.3d 458, 464 n.1 (3d Cir. 2013)("[T]he appropriate procedural device for reviewing the § 2680(j) preemption argument is not a motion pursuant to Rule 12(b)(1), but rather a motion under either Rule 12(b)(6) or for summary judgment."). The United States Court of Appeals for the Sixth Circuit has explained that preemption "does not normally concern the subject-matter jurisdiction of a court to hear a claim, which is relevant to the resolution of a Rule 12(b)(1) motion." Trollinger v. Tyson Foods, Inc., 370 F.3d 602, 608 (6th Cir. 2004). See Boler v. Earley, 865 F.3d 391, 400 n.3 (6th Cir. 2017)("We have not found other comparable cases using a Rule 12(b)(1) motion to address statutory preemption of § 1983 claims; it appears that the district court incorrectly addressed this issue as jurisdictional."). "Rather, the doctrine generally concerns the merits of the claim itself." Trollinger v. Tyson Foods, Inc., 370 F.3d at 608. See also Metro. Edison Co. v. Pa. Pub. Utility Com'n, 767 F.3d 335, 362 (3d Cir. 2014)(noting that "pre-emption arguments do not ordinarily raise issues of subject matter jurisdiction" but that "'[d]octrines of federal pre-emption . . . may in some contexts be controlling' over 'the general rule of finality of jurisdictional determinations'" (quoting Durfee v. Duke, 375 U.S. 106, 114 (1963))).

The United States Court of Appeals for the Ninth Circuit, however, has affirmed a case's dismissal on preemption grounds under rule 12(b)(1) without comment as to the appropriateness of that rule to preemption arguments. See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S., 497 F.3d 972, 975 (9th Cir. 2007). The United States Court of Appeals for the Seventh Circuit has also dismissed a claim under rule 12(b)(1) on preemption grounds, but only where the federal law preempted the state law claim, and the federal law did not provide a private right of action. See Slaney v. Int'l Amateur Athletic Fed'n, 244 F.3d 580, 594-96 (7th Cir. 2001). The Tenth Circuit does not appear to have taken a definitive position on the issue. In Ryan v. Donley, 511 F. App'x 687 (10th Cir. 2013) the Tenth Circuit affirmed a district court's dismissal of a Whistleblower Protection Act, 5 U.S.C. §§ 1201-09, claim pursuant to rule 12(b)(1), noting that "there can be no such claim, due to preemption by the Civil Service Reform Act." 511 F. App'x at 690. Dismissal for lack of subject matter under rule 12(b)(1) in that case is proper, however, because the Civil Service Reform Act's "preemption" means that the Whistleblower Protection Act does not provide a private right of action, so there is no federal-question jurisdiction. The Tenth Circuit has not otherwise commented on this issue.

Medtronic, Inc. v. Lohr, 518 U.S. at 485. Second, "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case." Medtronic, Inc. v. Lohr, 518 U.S. at 485.

> Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it. Also relevant, however, is the structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.

Medtronic, Inc. v. Lohr, 518 U.S. at 486.

Implied conflict preemption is found when it is impossible for a private party to comply with both state and federal requirements, see English v. Gen. Elec. Co., 496 U.S. 72, 78-79 (1990), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz, 312 U.S. 52, 67 (1941). "Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law." Hines v. Davidowitz, 312 U.S. at 67 (citing Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995)).

Obstacle preemption is one form of implied preemption. Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000)(holding that preemption is appropriate where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 679 (2003)(Thomas, J., concurring)("Obstacle pre-emption turns on whether the goals of the federal statute are frustrated by the effect of the state law."). The Supreme Court instructed that, in obstacle preemption cases, "there is no federal pre-emption in vacuo, without a constitutional text or a federal statute to assert it." P.R. Dep't of Consumer Affairs v. Isla Petroleum Corp., 485 U.S. 495, 503 (1988). See Gade v. Nat'l Solid Wastes Mgmt. Assoc., 505 U.S. at 98. A reviewing court must still "examine the

explicit statutory language and the structure and purpose of the statute." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990). In 2000, the Supreme Court decided Geier v. Am. Honda Motor Co., 529 U.S. 861 (2000), which held, in a five-to-four decision, that a federal regulation which permitted, but did not require, airbags to be installed in passenger vehicles preempted claims that a car was defective because it lacked an airbag. See 529 U.S. at 874. The majority found: "The rule of state tort law for which petitioners argue would stand as an 'obstacle' to the accomplishment of [the federal regulation's] objective. And the statute foresees the application of ordinary principles of pre-emption in cases of actual conflict. Hence, the tort action is pre-empted." 529 U.S. at 886. The Honorable John Paul Stevens, former Associate Justice of the Supreme Court of the United States, in dissent, expressed a desire to eliminate obstacle preemption. See 529 U.S. at 907-08 (Stevens, J., dissenting). He argued that the presumption against preemption

> [s]erves as a limiting principle that prevents federal judges from running amok with our potentially boundless (and perhaps inadequately considered) doctrine of implied conflict pre-emption based on frustration of purposes -- i.e., that state law is pre-empted if it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

529 U.S. at 907-08 (Stevens, J., dissenting).

The Supreme Court has begun to back away from finding implied preemption based on an alleged conflict with the purposes underlying federal regulations. In 2003, the Supreme Court issued a unanimous decision in Sprietsma v. Mercury Marine, 537 U.S. 51 (2002), rejecting implied conflict preemption of state law claims that a boat engine was defective, because it lacked a propeller guard. See 537 U.S. at 70. In so doing, the Supreme Court considered and rejected an argument that the Coast Guard's decision not to adopt a regulation requiring propeller guards

impliedly preempted state-law claims, which inflicted liability for lack of a propeller guard. See 537 U.S. at 65. It explained:

> The decision in 1990 to accept the subcommittee's recommendation to take no regulatory action left the law applicable to propeller guards exactly the same as it had been before the subcommittee began its investigation. Of course, if a state common-law claim directly conflicted with a federal regulation promulgated under the Act, or if it were impossible to comply with any such regulation without incurring liability under state common law, pre-emption would occur. This, however, is not such a case.

537 U.S. at 65.

In Altria II, the Supreme Court again considered the implied preemption doctrine and rejected the defendants' obstacle-preemption argument that the Federal Cigarette Labeling and Advertising Act ("FCLAA") preempted a similar state act, Maine's Unfair Practices Act, Me. Rev. Stat. Ann., Tit. 5, § 207 (2008). See 555 U.S. at 90-91. In Altria II, the plaintiffs filed suit against defendant cigarette manufacturers for deceptively marketing their Marlboro and Cambridge Light cigarettes as containing lower tar and nicotine to convey that their light cigarettes were less harmful than regular cigarettes. See 555 U.S. at 73. The Supreme Court concluded that the FCLAA, which forbids state law from requiring or prohibiting language with respect to cigarette advertising and promotion, presented no obstacle to the plaintiffs' lawsuit, because the federal law ultimately regulated warning labels, and did not regulate false or misleading statements. See 555 U.S. at 82-83. The Supreme Court also considered whether an Federal Trade Commission ("FTC") guidance statement, which noted that "a factual statement of the tar and nicotine content . . . would not violate the FTC Act," impliedly preempted the Plaintiffs' claims. 555 U.S. at 87. The Supreme Court contemplated and rejected the cigarette manufacturers' argument that the FTC's statement "authorized them to use descriptors" such as "light or low tar," because the FTC statements did

not require that cigarette manufacturers disclose their tar and nicotine yields, and the United States "Government itself disavows any policy authorizing the use of light and low tar descriptors." 555 U.S. at 88. Moreover, the Supreme Court determined that an FTC consent order that prevents the cigarette manufacturers from using "light" and "low tar" descriptors, unless they are accompanied "by a clear and conspicuous disclosure of the cigarettes' tar and nicotine content" does not preempt the plaintiffs' claims, because "the decree only enjoined conduct," and "a consent order is in any event only binding on the parties to the agreement." 555 U.S. at 589 n.13. The Supreme Court concluded, thus, that federal law and regulations did not preempt the plaintiffs' state law claims. See 555 U.S. at 90.

In Wyeth v. Levine, 555 U.S. 555 (2009), six Justices of the Supreme Court, including the Honorable Stephen Breyer and the Honorable Anthony Kennedy, who joined in the majority decision in Geier v. Am. Honda Motor Co., rejected the plaintiff's two implied preemption arguments -- impossibility preemption and obstacle preemption. See Wyeth v. Levine, 555 U.S. at 581. The Supreme Court held that

> it is not impossible for Wyeth to comply with its state and federal law obligations and that Levine's common-law claims do not stand as an obstacle to the accomplishment of Congress' purposes in the [Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. §§ 301, 321, 331-337, 341-350, 361-364, and 381-399; 21 C.F.R. § 201.80(e)("FDCA")].

Wyeth v. Levine, 555 U.S. at 581. In so ruling, Justice Stevens, writing for the majority, narrowly limited Geier v. Am. Honda Motor Co. to its facts, noting that the decision in that case is based on the substantive regulation's "complex and extensive" history at issue. 555 U.S. at 566. The Supreme Court rejected obstacle preemption, stating: "If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at

some point during the FDCA's 70-year history." 555 U.S. at 609. Justice Stevens quoted the explanation of the Honorable Sandra Day O'Connor, former Associate Justice of the Supreme Court of the United States, in Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 109 (1989): "The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them." Wyeth v. Levine, 555 U.S. at 575 (quoting Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. at 166-67).

Of particular import for the current status of implied obstacle preemption is the concurring opinion of the Honorable Clarence Thomas, Associate Justice of the Supreme Court of the United States, in Wyeth v. Levine:

> I write separately, however, because I cannot join the majority's implicit endorsement of far-reaching implied pre-emption doctrines. In particular, I have become increasingly skeptical of this Court's "purposes and objectives" pre-emption jurisprudence. Under this approach, the Court routinely invalidates state laws based on perceived conflicts with broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not embodied within the text of federal law. Because implied pre-emption doctrines that wander far from the statutory text are inconsistent with the Constitution, I concur only in the judgment.

555 U.S. at 583 (Thomas, J., concurring in the judgment). Justice Thomas continued:

> Under the vague and potentially boundless doctrine of purposes and objectives pre-emption . . . the Court has pre-empted state law based on its interpretation of broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not contained within the text of federal law . . . . Congressional and agency musings, however, do not satisfy the Art. I, § 7 requirements for enactment of federal law and, therefore, do not pre-empt state law under the Supremacy Clause.

555 U.S. at 587. Justice Thomas emphasized that, when analyzing the federal statutes' or regulations' preemptive effect, "[e]vidence of pre-emptive purpose must be sought in the text and structure of the provision at issue" to comply with the Constitution. 555 U.S. at 588 (citing CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993)).[6]

Moreover, the Supreme Court has put renewed emphasis on the presumption against preemption. See Bates v. Dow Agrosciences, LLC, 544 U.S. 431, 449 (2005). "In areas of traditional state regulation, [the Supreme Court] assume[s] that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." Bates v. Dow Agrosciences, LLC, 544 U.S. at 449. If confronted with two plausible interpretations of a statute, the court has "a duty to accept the reading that disfavors pre-emption." Bates v. Dow Agrosciences, LLC, 544 U.S. at 449. See Wyeth v. Levine, 555 U.S. at 565; Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 518 (1992)(plurality opinion). In Arizona v. United States, 567 U.S. 387 (2012), the Supreme Court once again emphasized the importance of clear Congressional intent when applying obstacle preemption. See 567 U.S. at 398-99. The Supreme Court invalidated provisions of an Arizona immigration law that would penalize aliens who sought, or engaged in, unauthorized employment, because it "would interfere with the careful balance struck by Congress with respect to unauthorized employment of aliens." 567 U.S. at 406. With the Honorable Elena

---

[6]Justice Thomas, writing for the five-to-four majority in PLIVA, Inc. v. Mensing, 564 U.S. 604 (2011), recently concluded, however, that federal law preempted inconsistent state laws on generic drug labeling, because it was impossible to comply with both federal law and the states' law. See 564 U.S. at 617-18. The Supreme Court sought to reconcile Wyeth v. Levine, however, recognizing that the respective statutory schemes in each case are distinguishable. See PLIVA, Inc. v. Mensing, 564 U.S. at 626 ("It is beyond dispute that the federal statutes and regulations that apply to brand-name drug manufacturers are meaningfully different than those that apply to generic drug manufacturers.").

Kagan, Associate Justice of the Supreme Court of the United States, taking no part in the consideration or decision of the case, writing for a five-to-three majority, which included the Honorable John G. Roberts, Chief Justice of the Supreme Court of the United States, the Honorable Ruth Bader Ginsburg, Associate Justice of the Supreme Court of the United States, the Honorable Sonia Sotomayor, Associate Justice of the Supreme Court of the United States, and Justice Breyer, Justice Kennedy wrote: "The correct instruction to draw from the text, structure, and history of [the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1101,] is that Congress decided it would be inappropriate to impose criminal penalties on aliens who seek or engage in unauthorized employment." 567 U.S. at 406. The Supreme Court ruled that Congressional intent was clear; Congress had considered and rejected penalizing aliens who sought unauthorized employment. See 567 U.S. at 405. Federal immigration law therefore preempted the Arizona law that would have penalized aliens seeking unauthorized employment, because it would have created a penalty that Congress had clearly and intentionally omitted. See 567 U.S. at 407.

The Tenth Circuit has recognized federal preemption of state law in three categories: (i) when a federal statute expressly preempts state law ("express preemption"); (ii) where Congress intends to occupy a field ("field preemption"); and (iii) to the extent that a state law conflicts with a federal law ("conflict preemption"). Colo. Dep't of Pub. Health & Env't, Hazardous Materials & Waste Mgmt. Div. v. United States, 693 F.3d 1214, 1222 (10th Cir. 2012). As the defendant in Colo. Dep't of Pub. Health and Env't, Hazardous Materials and Waste Mgmt. Div. v. United States, the United States invoked only conflict preemption to dismiss Colorado's claims against it. See 693 F.3d at 1222. "To avoid conflict preemption, 'it is not enough to say that the ultimate goal of both federal and state law is the same. A state law also is pre-empted if it interferes with

the methods by which the federal statute was designed to reach this goal." Chamber of Commerce v. Edmondson, 594 F.3d 742, 769 (10th Cir. 2010)(alterations, citation omitted)(quoting Int'l Paper Co. v. Ouellette, 479 U.S. 481, 494 (1987)(alterations, citation omitted)). In Colorado Department of Public Health & Environment, Hazardous Materials & Waste Management Division v. United States, the State of Colorado created a schedule for the United States to follow in the destruction of hazardous waste stored in the state in an attempt to prohibit the storage of hazardous waste within the state. See 693 F.3d at 1223. The Tenth Circuit held that the state statute creating this schedule conflicted with a federal statute, which mandated a deadline for the destruction of the materials. See 693 F.3d at 1224. The Tenth Circuit reasoned that allowing the State of Colorado to set a deadline for the destruction of the materials would impede the flexibility with which Congress had intended in its deadline. See 693 F.3d at 1224. Because the Colorado deadline would interfere with the method that Congress had intended for the waste's disposal, the Tenth Circuit concluded that the state law is in conflict with the federal law and, therefore, that the federal law preempts Colorado's schedule. See 693 F.3d at 1224.

## ANALYSIS

The Court remands the case to the County of Santa Fe, First Judicial District, State of New Mexico and denies Darr's request for fees and costs. Darr's causes of action do not require the Court to discuss the FMLA, and Darr emphatically denies that she will present a federal question in subsequent state court proceedings. Accordingly, the Court concludes that the case does not involve a federal question. NM Game & Fish's FMLA arguments, however, are not sufficiently unreasonable to warrant the imposition of fees and costs.

## I. THE COURT WILL REMAND THE CASE, BECAUSE NO SUFFICIENT FEDERAL QUESTION EXISTS TO VEST THE COURT WITH SUBJECT-MATTER JURISDICTION.

A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. at 392 (citing Gully v. First Nat'l Bank, 299 U.S. at 112-13, 57). As "the master of the claim," the plaintiff may choose to sue in state court rather than in federal court "by exclusive reliance on state law." Caterpillar, Inc. v. Williams, 482 U.S. at 392.

Darr began this case in state court by filing her Complaint asserting that NM Game & Fish discriminated and retaliated against her in violation of four New Mexico statutes: (i) the Whistleblower Protection Act; (ii) the FPWA; (iii) the FATA; and (iv) the NMHRA. See Complaint ¶¶ 93-146, at 21-30. As factual background to support her claims, Darr asserts that NM Game & Fish's retaliatory behavior caused her "to develop a temporary mental health condition, anxiety and clinical depression," Complaint ¶ 1, at 3, which ultimately led to NM Game & Fish approving her request "for intermittent Family and Medical Leave" under the FMLA, Complaint ¶ 51, at 13. The FMLA entitles qualifying employees to a total of twelve administrative weeks of leave during any twelve-month period under certain specified circumstances, including instances where a serious health condition makes an employee unable to perform the functions of the employee's position. See 29 U.S.C. § 2612(a)(1); Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d at 1180 ("The FMLA guarantees the substantive rights of up to twelve weeks of unpaid

leave for eligible employees of covered employers for serious health conditions and reinstatement to the former position or an equivalent one upon return from that leave.").

NM Game & Fish, in timely fashion, removed the case to federal court in accordance with 28 U.S.C. § 1441(a), asserting federal jurisdiction, because, in paragraphs 51-52, 57, 67, 70-71, 75-76, 90, 97, and 123-25, Darr "refers to the Family Medical Leave Act or . . . authorized Family Medical Leave," which, according to NM Game & Fish, will compel the Court to interpret and apply the FMLA. Removal Notice ¶ 2, at 1. NM Game & Fish contends that such references "imply that Defendant interfered with Plaintiff's FMLA rights," Removal Notice ¶ 4, at 2, and "invite[] the Court to infer that the Defendant violated Plaintiffs Family Medical Leave rights," Removal Notice ¶ 5, at 2. Moreover, NM Game & Fish adds, Darr's allegations -- that she was the victim of unlawful retaliation for having taken Family Medical Leave and that NM Game & Fish interfered with her exercise of her FMLA rights -- invoke causes of action "recognized only in federal law, 29 U.S.C. §§ 2601 et. seq. (2009)." Removal Notice ¶ 7, at 3. Accordingly, NM Game & Fish concludes, "this action may be removed to the United States District Court for the District of New Mexico." Removal Notice ¶ 7, at 3.

As the Court understands NM Game & Fish's argument, then, this case turns on a substantial federal question, because, although the Complaint's face asserts only state law claims, Darr bases these claims on allegations of interference or retaliation for exercising her FMLA rights which, according to NM Game & Fish, implies that Darr is bringing a retaliation claim under the FMLA. See Tr. at 15:13-20 (Williams). NM Game & Fish insists, therefore, that the factfinder will have to decide: (i) whether Darr was disabled under the FMLA; (ii) whether, if Darr was disabled under the FMLA, NM Game & Fish retaliated against her because of her disability; and

(iii) whether NM Game & Fish interfered with Darr's FMLA rights.  See Tr. at 22:5-10 (Williams).  The Court must thus consider, specifically, whether on the face of Darr's Complaint, a substantial federal question involving the FMLA arises for the Court's analysis of Darr's retaliation and interference claims.

The Court cannot discern how Darr's right to relief under state law requires resolution of a substantial question of federal law under the FMLA.  Ultimately, the primary legal issue that the Complaint raises is whether NM Game & Fish's actions after approving Darr's FMLA leave, e.g., its decision not to reassign Darr to a less hostile supervisor, and not to provide Darr with reasonable accommodations, such as a tape recorder, constitute retaliation and interference sufficient to violate the Whistleblower Protection Act, the FPWA, the FATA, and the NMHRA.  By the Complaint, Darr does not assert that the FLMA affects her state law claims other than providing an example of the type of activity that New Mexico disability law protects.  Such protection is evident in the NMHRA's anti-discrimination provision, for example, which forbids "an . . . employer . . . to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because . . . of . . . physical or mental handicap or serious medical condition," N.M. Stat. Ann. § 28-1-7(A), and in its anti-retaliation provision, which forbids "any person or employer to . . . engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the [New Mexico] Human Rights Act," N.M. Stat. Ann. § 28-1-7(I)(2).  The Whistleblower Protection Act likewise forbids retaliation: "A public employer shall not take any retaliatory action against a public employee because the public employee . . . communicates to the public employer or a third party information

about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act."  N.M. Stat. Ann. § 10-18-3.

Although the Complaint mentions the FLMA in passing, Darr in the Motion and at the September 25, 2018, hearing confirms that her state law claims require predicate facts, and have causes of action, independent of the FMLA; thus, the Complaint relies solely on state law as its basis for the lawsuit.  See Motion at 1 ("Ms. Darr . . . has raised certain allegations of retaliation in violation of the FMLA as predicate facts to support her state-law retaliation claims."); Tr. at 32:8-12 (Garrity)("[T]he predicate facts phrase means that we were simply telling Ms. Darr's stor[y] and the fact that we made reference t[o] family medical leave accounts [for] part of her story.").  Although it appears as though Darr seeks to avoid the FMLA's jurisdiction, in part, because the FMLA affords plaintiffs only injunctive relief, see Tr. at 36:24-37:3 (Garrity)("[T]he Family Medical Leave Act for state public employees is limited to injunctive rel[ief] [--] you can't have monetary damages because of the sovereign immunity concerns with the state [g]overnment."), her state law claims as pleaded entitle her to state-law relief, see, e.g., N.M. Stat. Ann. § 28-23-6(A) (providing for back pay and treble damages for retaliation and "all other actual damages"); N.M. Stat. Ann. § 44-9-7 (containing a qui tam provision that allows for an award of "at least fifteen percent but not more than twenty-five percent of the proceeds of the action or settlement"); N.M. Stat. Ann. § 10-16C-4 ("A public employer that violates the provisions of the Whistleblower Protection Act shall be liable to the public employee for actual damages, reinstatement with the same seniority status . . . , two times the amount of back pay with interest . . . and compensation for any special damage sustained.").  Cf. Gill v. Pub. Emps. Ret. Bd., 2004-NMSC-016, ¶ 30, 90 P.3d 491, 501 ("We observe that New Mexico created a state

remedy for age discrimination through the New Mexico Human Rights Act that affords victims back wages and other monetary relief.").  The Court concludes therefore that the Complaint's FMLA references are mere background for Darr's assertion that she was a member of a protected class engaged in protected activity.

Additionally, the Complaint does not request that the Court review NM Game & Fish's FMLA-leave-approval decision or the temporary disability finding of Darr's physician.  Instead, NM Game & Fish seeks only to import the artful-pleading doctrine to support its position that Darr, in contravention of the well-pleaded complaint rule, "intentionally excluded any FMLA interference and/or FMLA retaliation claims in her Complaint in an attempt to make it appear as though there are no federal questions in this case."  Response at 4.  This position does not take into account, however, that the state laws which Darr invokes contain provisions that require merely that the plaintiff suffered discrimination and retaliation because of his or her disability.  See N.M. Stat. Ann. § 10-16-2D; N.M. Stat. Ann. § 28-1-7(A); N.M. Stat. Ann. § 28-1-7(I)(2); N.M. Stat. Ann. § 28-23-3(A).  NM Game & Fish cannot turn the state law claims in the Complaint into claims based on federal remedies merely because Darr could have invoked federal remedies on the same facts:

> The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Gully v. First National Bank*, 299 U.S. 109, 112-113 (1936).  The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  See Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. at 809 n.6 ("Jurisdiction may not be sustained on a theory that the plaintiff

has not advanced."); <u>Fair v. Kohler Die & Specialty Co.</u>, 228 U.S. 22, 25 (1913)("[T]he party who brings a suit is master to decide what law he will rely upon.").

In addition to the requirement that the federal question appear on the complaint's face, a "plaintiff's cause of action must either be: (i) created by federal law; or (ii) if it is a state-created cause of action, 'its resolution must necessarily turn on a substantial question of federal law.'" <u>Nicodemus v. Union Pac. Corp.</u>, 318 F.3d at 1235 (quoting <u>Merrell Dow Pharm., Inc. v. Thompson</u>, 478 U.S. at 808). As for the second method, beyond the requirement of a "substantial" question of federal law at the heart of the case, the federal question must also be "actually disputed," and its resolution must be necessary to the case's resolution. <u>Grable</u>, 545 U.S. at 314. The exercise of federal-question jurisdiction must also be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." <u>Grable</u>, 545 U.S. at 313. In particular, the Court must determine whether recognition of federal-question jurisdiction will federalize a "garden variety" state law claim that will overwhelm the judiciary with cases that state courts traditionally hear. <u>Grable</u>, 545 U.S. at 318-19 (explaining that "there must always be an assessment of any disruptive portent in exercising federal jurisdiction" by accepting "garden variety" state law claims). <u>See</u> David L. Hanselman, <u>Supreme Court Federal Removal Jurisdiction, For the Defense</u> at 25, 65 (Sept. 2005)("The most important consideration is whether removal would federalize a garden-variety tort, contract, or fraud claim, or whether there is some uniquely federal aspect of the case that, if removed, could be adjudicated in federal court without subjecting the federal courts to a flood of original filings or removals.").

The Supreme Court has underscored that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. at 813. Indeed, the Supreme Court has "forcefully reiterated" that district courts must exercise "prudence and restraint" when determining whether a state cause of action presents a federal question because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. at 810. See Morris v. City of Hobart, 39 F.3d at 1111. The Court, in its review of the relevant pleadings and briefing in the case, concludes that the FMLA is, if it is an issue at all, a "mere[ly] presen[t] . . . federal issue," which has no bearing on the underlying employment dispute. Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. at 701.

As a threshold matter, neither party disputes that NM Game & Fish approved Darr's FMLA leave request. See Complaint ¶ 51, at 13; Tr. at 13:14-15 (Garrity); id. at 18:16-24 (Williams). Instead, NM Game & Fish asserts that the Complaint's references to the FMLA and Darr's receipt of FMLA leave in paragraphs 51-52, 57, 67, 70-71, 75-76, 90, 97, and 123-25 will compel the Court to interpret and apply the FMLA. See Removal Notice ¶ 2, at 1. The Court agrees with Darr that such references merely tell a part of her story, see Tr. at 32:8-12 (Garrity), and thus will not require any FMLA interpretation or application. Paragraph 51, for example, states merely that Darr "was approved for intermittent Family and Medical Leave," Complaint ¶ 51, at 13, and paragraph 52 asserts that NM Game & Fish neither transferred Darr nor investigated her "charges of a retaliatory work environment promptly after . . . approval of Family Medical Leave," Complaint ¶ 52, at 13. Paragraph 57 mentions how Darr informed her supervisor that NM Game

& Fish "had not engaged her in an interactive process despite . . . FMLA certification" merely to inform the Court that, as of September, 2017, NM Game & Fish was aware that Darr was a member of a protected class yet, according to Darr, did nothing to accommodate her disability, Complaint ¶ 57, at 14, which supports her claim under the NMHRA, see N.M. Stat. Ann. § 28-1-7. Paragraph 67's FMLA reference likewise asserts that Darr was a member of a protected class. See Complaint ¶ 67, at 16. Paragraphs 70, 71, and 75 discuss the retaliation that Darr suffered for taking FMLA leave, see Complaint ¶¶ 70-71, at 17; id. ¶ 75, at 18, to include a poor interim evaluation, see Complaint ¶ 71, at 17. Paragraph 76 discusses NM Game & Fish's single attempt to accommodate Darr "more than four months after . . . observing the ongoing need to use Family Medical Leave time off." Complaint ¶ 76, at 18. Paragraph 90 mentions that Darr "was unable to submit an updated resume . . . because the Family Medical Leave policy . . . did not permit Ms. Darr to use work email, computers or phones." Complaint ¶ 90, at 21. Paragraphs 97, 123, 124 and 125 repeat the FMLA references described above to support Darr's causes of action under the Complaint's first and fourth Counts. See Complaint ¶ 97, at 22; id. ¶¶ 123-25, at 22, 27. Hence, the Court concludes that the Complaint's passing FMLA references merely provide information to show legally cognizable claims under New Mexico state law and are therefore insufficient to provide a basis for the Court to exercise its jurisdiction.

Moreover, at the September 25, 2018, hearing, the Court confirmed that the Complaint does not involve a substantial federal question when it, for example, asked Darr whether she could "think of any FMLA claim" that would compel the Court "to have to write any opinion or a portion of an opinion that's going to have to decide any federal issue," Tr. at 6:4-7 (Court), and Darr responded in the negative, see Tr. at 6:8 (Garrity). The Court further inquired whether Darr is

"going to be in any way telling the jury or telling me that there were violations of the FM[L]A," Tr. at 8:10-12 (Court), to which Darr responded: "No, Your Honor," Tr. at 8:13 (Garrity). The Court sought additional confirmation from Darr that the FMLA is "just not a part of your case," Tr. at 8:14 (Court), and Darr replied: "Correct," Tr. at 8:15 (Garrity). The Court then asked, if NM Game & Fish's counsel "were to send you over an interrogatory saying . . . are you alleging any violations of the FM[LA][,] you'd sign that and s[e]n[]d it back to him . . . saying no?" Tr. at 8:16-19 (Court). Darr responded: "Correct, we would do that. Because there simply aren't any claims un[der] the Family Medical Leave Act." Tr. at 8:20-22 (Garrity). When the Court asked: "Are you going to have to have any expert, any witness turn to that jury and tell them anything about FMLA . . . , [y]ou know . . . explain to them how it works or any sort of issue," Tr. at 13:10-13 (Court), Darr replied: "I don't think so, Your Honor, because it's really not in dispute," Tr. at 13:14-15 (Garrity). The Court then asked whether Darr could "think of any jury instruction, anything I'm going to have [to give] to help the jury . . . so that they []under[stand the] case? Am I going to have to give them any jury instruction about the FMLA," Tr. at 13:25-14:4 (Court), to which Darr replied:

> I don't think so. Again, Your Honor, simply because we're not disputing that the benefit was received. There might be a jury instruction that relate[s] to protected activity. . . . [The] jury [may] believe that Ms. Darr engaged in protected activity and then list[] the receipt of Family Medical Leave Act as one of those protected activities . . . . That could be part of the jury instruction I could anticipate that that could be listed as one of the areas of protected activity for Ms. Darr. But . . . you're not actually going to have to resolve any substantive issue with the Family Medical Leave Act.

Tr. at 14:5-20 (Garrity). The Court, accordingly, is satisfied that a substantial federal question of law is not at issue in this employment dispute's resolution. Although the FMLA requires the State of New Mexico to permit employees suffering from serious health conditions to take up to twelve

weeks of administrative leave per year, this requirement does not stop New Mexico employees from asserting state law causes of action when their employers violate their rights under the FMLA. Here, the dispute is whether NM Game & Fish discriminated and retaliated against Darr for taking FMLA leave. Were the dispute concerned with challenging or enjoining the State of New Mexico's decision whether to approve Darr's FMLA leave request, the Court likely would reach a different jurisdictional result. Instead, Darr's Complaint is based entirely on New Mexico employment and disability causes of action, none of which on their face turn on a federal issue. Hence, the Court concludes that the case does not involve a substantial federal question. See Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. at 701 ("[T]he mere presence of a federal issue in a state cause of action and the mere assertion of a federal interest are not enough to confer federal jurisdiction."). Accordingly, the Court will remand the case to the County of Santa Fe, First Judicial District Court, State of New Mexico.[7]

## II. THE COURT DENIES DARR'S REQUEST FOR COSTS AND FEES.

The Court will not grant Darr's request for the fees and costs for removal. See Motion at 8. Although NM Game & Fish does not have a winning argument for federal jurisdiction, its contentions are not "objectively unreasonable." Martin v. Franklin Capital Corp., 546 U.S. at 140. The Court does not, therefore, deem fees and costs warranted.

---

[7]There is no indication that NM Game & Fish submitted to Darr the Court's suggested interrogatory committing Darr to her position that she is not alleging an FMLA violation. Perhaps they did, and the results are just not part of the Court record. In any event, given that NM Game & Fish has secured such representations in federal court under oath, the Court imagines that, should Darr change her position or argue in state court precisely what she has told the Court that she will not do, NM Game & Fish can benefit from the doctrine of judicial estoppel and thereby preclude Darr from taking a position contrary to the position she has taken in these proceedings.

Section § 1447(c) empowers courts to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The decision to award fees and costs lies in the court's discretion. See Martin v. Franklin Capital Corp., 546 U.S. at 139. The Supreme Court has clarified that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. at 141. "It is not necessary that the plaintiff show that the defendants acted in bad faith to win attorney's fees." Archuleta v. Taos Living Ctr., LLC, 791 F. Supp. 2d 1066, 1081-82 (D.N.M. 2011)(Browning, J.)(citing Topeka Housing Auth. v. Johnson, 404 F.3d 1245, 1248 (10th Cir. 2005)).

Because the Court is granting the Motion, the Court has the power to require NM Game & Fish to pay Darr's fees and costs for litigating this issue. The Court will not require the payment of fees and costs, because NM Game & Fish's FMLA arguments are not sufficiently unreasonable to warrant such an imposition. Where a defendant has made good-faith arguments and cited authority to support their removal, the Court has not ordered fees and costs. See, e.g., Archuleta v. Taos Living Ctr., LLC, 791 F. Supp. 2d at 1082 (denying a request for fees and costs where the defendant "made good-faith arguments, with supporting authority, that removal was appropriate"); Allen v. Allstate Ins., No. CIV 08-0733 JB/RHS, 2010 WL 519862, at *6 (D.N.M. Jan. 26, 2010)(Browning, J.)("The Court finds that Allstate has made good-faith arguments and has found some authority to support its position that a second removal was appropriate."). Darr is correct that NM Game & Fish cites no on-point authority to support it position. See Reply at 6. No New Mexico court has yet addressed, however, the interplay between the FMLA and the statutes that

Darr invokes, and NM Game & Fish directed the Court to caselaw to support its removal arguments. See Response at 2-4; Tr. at 15:3-13 (Williams)(citing Grable, 545 U.S. at 314; Nicodemus v. Union Pac. Corp., 440 F.3d at 1232). NM Game & Fish's instinct is also not objectively unreasonable; the Complaint indeed contains over a dozen references to the FMLA, and Darr concedes that these references are a "predicate" to her state-law claims. Motion at 1. Cf. Lohman Properties, LLC v. City of Las Cruces, No. CIV.08-0875JB/WPL, 2008 WL 5999791, at *3 (D.N.M. Dec. 8, 2008)(Browning, J.)(denying a request for fees and costs where the reason for remanding the case was "not intuitively obvious"). Accordingly, the Court will grant the Motion insofar as the Motion moves the Court to remand the case to the County of Santa Fe, First Judicial District, State of New Mexico and will deny the Motion's request for fees and costs. The Court lacks jurisdiction to decide the remaining issues.

**IT IS ORDERED** that: (i) the requests in the Plaintiff's Opposed Motion for Remand and Memorandum in Support, filed July 19, 2018 (Doc. 6), are granted in part and denied in part; (ii) the Plaintiff's request to remand is granted, and the case and all its state claims are remanded to the County of Santa Fe, First Judicial District Court, State of New Mexico; and (iii) the Plaintiff's request for fees and costs is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Rosario D. Vega Lynn
Vega Lynn Law Offices, LLC
Albuquerque, New Mexico

--and--

Diane Garrity
Serra & Garrity, P.C.
Santa Fe, New Mexico

  *Attorneys for the Plaintiff*

Stephen M. Williams
Paula G. Maynes
Miller Stratvert PA
Santa Fe, New Mexico

  *Attorneys for the Defendant*